SEWELL *v.* REED.

4-3437

Opinion delivered April 9, 1934.

*Haynie, Parks & Westfall, Nash & Ahern, Newby, Rathburn & Burditt* and *Coleman & Riddick,* for appellants.

*Nace B. Crawford, Remington Rogers* and *Coulter & Coulter,* for appellee.

BUTLER, J. On the 23d day of May, 1933, Joe Reed, appellee, filed his complaint in the Ouachita Chancery Court, in which he alleged "that he, George Reed, Mary Reed Gaskin, Arthur W. Sewell and John W. Sewell, minors, heirs at law of Parthenia Berry Sewell, deceased, and certain other parties, the heirs at law of Millie Reed Weaver, deceased, were the owners as tenants in common of the west half of the northeast quarter and the east half of the northwest quarter of section 33, township 15 south, range 15 west, in Ouachita County, Arkansas, and that they derived title to said lands through Fannie Reed, the common source, to whom a patent was issued from the United States on or about January 15, 1885.

"He stated that Fannie Reed died intestate in Ouachita County on April 2, 1885, seized and possessed of the lands above described, and leaving surviving as her heirs at law the following named persons: the plaintiff, Joe Reed, a son; George Reed, a son and defendant; Mary Reed Gaskin, a daughter and defendant; Millie Reed Weaver, a daughter, and Nannie Reed Berry, a daughter, defendants.

"That Nannie Reed Berry died possessed of her interest in the property and leaving as her sole heir at law a daughter, Parthenia Berry Sewell, who later died without having alienated her interest in the property and leaving surviving as her sole heirs at law defendants Arthur W. Sewell and John W. Sewell, minors; that Millie Reed Weaver died intestate, leaving surviving numerous heirs at law who were made parties defendant, but who are not parties to this appeal.

"That title to the above-described property is now vested in the following persons as tenants in common as follows: In Joe Reed, plaintiff, an undivided one-fifth interest; in George Reed, an undivided one-fifth interest; in the minors, Arthur W. and John W. Sewell, through their mother, Parthenia Berry Sewell, heir at law of Nannie Reed Berry, an undivided one-fifth interest. In numerous defendants, heirs at law of Millie Reed Weaver, an undivided one-fifth interest.

"That the defendants have at all times mentioned been in possession of the lands described for the benefit of the plaintiff and said defendants; that on or about October 16, 1922, defendants sold a commercial oil and gas mining lease on the property for the sum of $70,000, but failed to account to the plaintiff for his interest; that since the sale of the lease the defendants have collected royalties under the lease amounting to more than $100,-000, for which they have refused to account.

"That defendant, Chicago Title & Trust Company, holds certain sums of money for its wards, Arthur W. and John W. Sewell; that certain defendant oil companies [later dismissed by plaintiff], unless restrained, would continue to pay over the royalties to plaintiff's cotenants to plaintiff's irreparable injury.

"Plaintiff prayed for an accounting and judgment for a one-fifth share in the sum realized from the sale of oil and gas from the property; for a decree of partition of the lands between himself and his defendant cotenants; and for the impounding of the other interests in the land for the satisfaction of his claims."

To this complaint, certain oil companies which had been made defendants filed their answers, but these pleadings need not be noticed since the suit as to these defendants was dismissed by the plaintiff. The guardian of the appellants, Arthur W. and John W. Sewell, made answer, denying the allegations of the complaint and setting up as an affirmative defense that "Fannie Reed, at the time of her death, was the owner of the land described; that after her death an administrator was appointed to administer upon her estate, that certain claims were filed and probated and that the probate court of Ouachita County, Arkansas, ordered a sale of the lands involved to secure funds with which to discharge the claims. That, in pursuance to the order of the probate court, the lands described were sold to one Chandler, and an administrator's deed executed and delivered to him. A copy of the deed was attached as a part of the answer and marked Exhibit A. It alleged the sale by Chandler of the property involved to Nannie Reed Berry, attaching his deed as Exhibit B and making it a part of the answer. It alleged that Nannie Reed Berry went in possession of the land under her deed from Chandler and remained in possession until her death, claiming to be the owner thereof; that, upon the death of Nannie Reed Berry, the land passed into the possession and ownership of Parthenia Berry Sewell, who remained in open, notorious and exclusive possession, claiming ownership for more than seven years. It alleged the death of Parthenia Berry Sewell, the vesting of the title in the minors, Arthur W. and John W. Sewell, and their subsequent open and notorious possession under claim of ownership. The defendant prayed the dismissal of the complaint for want of equity."

On the pleadings and evidence adduced, the trial court found the issues of law and fact in favor of the

plaintiff, and rendered a decree in accordance with the prayer of the complaint. From that decree, this appeal is prosecuted.

The correctness of the decree is challenged on the following grounds: (1) that the proof is not sufficient to establish that Joe Reed was the child of Fannie Reed; (2) that his claim as a tenant in common is barred by limitation; (3) that the appellee is barred by his laches; and (4) that the sale of the land by the Ouachita Probate Court divested the title out of all the heirs of Fannie Reed.

We are of the opinion that the contention last made is sound, and there is therefore no necessity for us to deal with the other questions presented by the appellant and to discuss the evidence relating thereto.

On April 19, 1892, the probate court of Ouachita County, by its order, duly entered of record, approved the appointment of J. C. Russell as administrator of the estate of Fannie Reed, deceased, made by the clerk in vacation. On January 17, 1894, said court made and entered an order reciting the application by the administrator for an order to sell the lands of the intestate to pay debts probated against the estate, it being alleged that there was no personal property of the estate out of which the debts could be paid. The prayer of the administrator's petition was granted, and the sale ordered to be held on February 28, 1894. At the April term of the probate court, on April 16, 1894, an order was duly made and entered of record confirming the sale of the lands to D. W. Chandler for the sum of $190. On August 2, 1895, an administrator's deed containing the proper recitals was executed, conveying the lands to the purchaser, Chandler, which deed was duly acknowledged and recorded on August 29, 1895.

The judgment of the probate court is sought to be set aside on the theory that the grant of letters to Russell was improvidently made by the court because the heirs of Fannie Reed, who were *sui juris* and lived within the county, had not been served with citation under the provisions of the statute giving a preferential right to administer to one entitled to a distributive part of the

estate of the intestate; and, second, because there were in fact no debts due by the estate, or any other necessity for an administration, and, in consequence thereof, the administration proceedings on the estate of Fannie Reed are void.

The evidence shows that on the 11th day of February, 1904, Chandler, the purchaser at the administration sale, by his quitclaim deed of that date, his wife joining therein, duly executed and acknowledged, conveyed said land to Nannie Berry, a daughter of Fannie Reed and the mother of the Sewell appellants. It is the contention of the appellee that, if the validity of the administration proceedings be conceded, since Nannie Berry, after the death of her mother, Fannie Reed, was a tenant in common with the appellee, the purchase by her inured to his benefit, and that their status as tenants in common was not changed by reason of her purchase from Chandler.

A probate court has exclusive original jurisdiction in matters relative to the estates of deceased persons, executors and administrators. Therefore, in the administration proceedings, it was acting within its jurisdiction. As to all such matters, it is a court of superior jurisdiction, and its judgments import the same degree of verity as that of other superior courts. *Flowers* v. *Reece,* 92 Ark. 611, 123 S. W. 773. Jurisdiction is specifically given probate courts to order a sale of real estate of an intestate to pay debts. *Stumpff* v. *Louann,* 173 Ark. 193, 292 S. W. 106; *Sullivan* v. *Times Publishing Co.,* 181 Ark. 27, 24 S. W. (2d) 865. Since the court had jurisdiction in the proceedings, errors and irregularities would not render its judgment void. Therefore the fact that the heirs had no notice would be an error which might have been corrected in that court or by appeal. If there was an error in granting the letters to Russell without notice to the heirs, it was such one as did not render the proceedings void. *Jackson* v. *Reeve,* 44 Ark. 496. The fact also that there might have been no debts due by the estate was not sufficient to render the judgment void. *Stuart* v. *Peay,* 21 Ark. 117. The judgment of a probate court as to the necessity for an administration is conclusive on collateral

attack. *Sharp* v. *Himes,* 129 Ark. 327, 196 S. W. 131; *Turley* v. *Gorman,* 133 Ark. 473, 202 S. W. 822.

The appellee contends, however, that the instant proceeding is not a collateral, but a direct, attack upon the judgment of the probate court for fraud in its procurement. It will be observed by reference to the complaint filed by the appellee that the action was for a purpose independent of the judgment of the probate court and contemplated other relief than the setting aside of that judgment. The rule announced and approved in *Cassady* v. *Norris,* 118 Ark. 449, 177 S. W. 10, is as follows: "If the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, then the attack upon the judgment is collateral." In *Woods* v. *Quarles,* 178 Ark. 1158, 13 S. W. (2d) 617, this court said: "A direct attack on a judgment is an attempt to amend it, correct it, reaffirm it, vacate it, or enjoin the execution in a proceeding instituted for that purpose." The judgment of the probate court was pleaded by the appellants in bar of the appellee's right to have the lands partitioned, and for an accounting for the proceeds derived from the land by the appellants. Although it was necessary to appellee's success in the suit which he had filed that the judgment of the probate court be overturned, this did not change the proceedings from a collateral to a direct attack. Since this is a collateral proceeding, the judgment of the probate court could only be avoided for lack of jurisdiction, and that must be apparent on the face of the record. *Blanton* v. *Forrest City Mfg. Co.,* 138 Ark. 508, 212 S. W. 230; *St. L.-S. F. R. Co.* v. *Wardell, etc., Rd. Imp. Dist.,* 157 Ark. 557, 249 S. W. 17. See also *Sullivan* v. *Times Publishing Co.,* 181 Ark., *supra.*

It is next contended by the appellee that, when Nannie Berry bought the lands from Chandler, the purchaser at the administrator's sale, she must be deemed to have purchased it for herself and for the benefit of her co-tenants, and states his contention as follows: "In any event, the purchase of an outstanding title against the commu-

nity property by one tenant in common would inure to the benefit of all cotenants.'' A number of cases of our court are cited to support this contention, among them being *Britton* v. *Handy*, 20 Ark. 381; *Ferguson* v. *Etter*, 21 Ark. 160; *Moore* v. *Woodall*, 40 Ark. 42; *Clements* v. *Cates*, 49 Ark. 242, 4 S. W. 776; *Cocks* v. *Simmons*, 55 Ark. 104, 17 S. W. 594; *Sanders* v. *Sanders*, 145 Ark. 188, 224 S. W. 732; *Tompkins* v. *Tompkins*, 151 Ark. 572, 273 S. W. 103. Without discussing these cases at length, it may be said they do not sustain the appellee's contention. The general principle is laid down in *Britton* v. *Handy, supra*, which prohibits a purchase by parties placed in a situation of trust or confidence with respect to the subject of the purchase, and therefore no one may be permitted to purchase for his own benefit an interest where he has a duty to perform which is inconsistent with his character of purchaser. There was no relationship of trust existing between Nannie Berry and her brothers and sisters, nor any duty to discharge the debt due by the intestate. She was not the purchaser at the administrator's sale, but from the purchaser at that sale, and she bought from him the lands 10 years subsequent to the administrator's sale. By reason of the sale by the administrator, an outstanding title was created, and, although Nannie Berry had been a tenant in common of her brothers and sisters subsequent to the death of Fannie Reed, their mother, and preceding their divesture of title by such sale, her purchase of the same from Chandler was not void, nor did that interest then acquired vest in her cotenants. Freeman on Cotenancy, § 156.

Moreover, a preponderance of the evidence clearly indicates that Nannie Berry, the mother of the appellants, minors, held the land after her purchase from Chandler adversely against all the world. She, acting through her husband, exercised rights of dominion over it, such as cutting and removing the timber, selling the same and executing mortgages, which manifested exclusive ownership in her, and that she was claiming adversely to her former co-tenants is conclusively shown by litigation between them in 1911, when all her known brothers and sisters

brought suit alleging that they and Nannie Berry were the sole heirs at law of Fannie Reed, deceased, and asking for a partition of the lands. This suit was resisted by Nannie Berry, and a decree rendered by the Ouachita Chancery Court denying the prayer of the plaintiffs in that case, and confirming title in Nannie Berry. In 1926 the same litigation was again instituted by the same parties plaintiff, and in the lower court and this court it was held that their rights were concluded by the judgment of the chancery court rendered in 1911. See *Reed* v. *Rumph,* 170 Ark. 258, 280 S. W. 357.

Our conclusion being that the judgment of the probate court authorizing and approving the sale of the lands by the administrator is valid on collateral attack and served to divest the title of the heirs of Fannie Reed, and that title acquired by Nannie Berry thereunder was not for the benefit of her co-tenants, it follows that the decree of the trial court must be reversed, and the case is remanded with directions to dismiss the complaint for want of equity.