WILDER *v.* HARRIS.

4-6992                    168 S. W. 2d 804

Opinion delivered February 22, 1943.

*Paul K. Holmes, Jr.,* for appellant.

*Ras Priest,* for appellee.

McFADDIN, J. Appellants were the owners of certain lots in the city of Newport located within Newport Levee District, which district was created by act No. 249 of 1917, and this appeal presents the question of whether the appellants will lose their property because of an improvement district foreclosure even though the appellants had paid the taxes involved in the said foreclosure.

Most excellent briefs have been filed by the able counsel for each side; and these briefs have materially aided the court. Here are the facts and dates in chronological order:

1. On April 13, 1937, the appellants paid to the clerk (under § 13888 of Pope's Digest) the 1934 and 1935 taxes of the Newport Levee District on the property here involved, and received therefor the regular redemption certificate, and the district received the money.

2. The clerk indorsed the redemption on the 1935 delinquent record, but inadvertently and unfortunately

failed to make the indorsement on the 1934 delinquent record.

3.  On August 10, 1937, the clerk prepared, verified and furnished to the Newport Levee District (under § 13891 of Pope's Digest) a certificate for the delinquencies for 1934 and 1935, and erroneously included appellants' property as delinquent and unpaid for 1934. In other words, the inadvertent failure to make the indorsement on the record, as mentioned above, was carried into the clerk's certificate without any fault or negligence of the appellants.

4.  On October 4, 1937, the Newport Levee District filed foreclosure on some 1,600 delinquent tracts so certified. Notice was given by publication, as provided in the act. No personal service was required or given the appellants or their tenant residing on the property.

5.  On November 23, 1937, a default decree of foreclosure was taken by the levee district in case No. 444 in the Jackson chancery court, and appellants' property was contained in the decree and order of sale.

6.  On May 28, 1938, the sale was held and the property bought by the district for the supposed delinquent tax for 1934 in the amount of $3.75, tax and penalty. The sale was reported to the court and approved on October 3, 1938.

7.  On May 28, 1940, (two years having expired from the sale date), the Commissioner's deed was acknowledged and ordered delivered by the court conveying to the levee district the property purchased at the sale and still unredeemed; and appellants' property was described in the deed.

8.  In March of 1941, the Newport Levee District, for $30, executed a deed to the appellees on the appellants' property. Thereafter, when the appellees entered upon the property, appellants learned for the first time of the foreclosure suit.

9.  On December 28, 1941, appellants filed, in the improvement district foreclosure suit, No. 444, as previously mentioned, a verified petition under § 8246 of Pope's Digest, seeking to vacate the judgment of No-

vember 23, 1937, and all subsequent proceedings. Appellants alleged payment as a meritorious defense, and alleged no knowledge of the proceedings, and set out the facts in full, claiming relief for any ground allowed under the statute, particularly constructive fraud and clerical misprision. The facts also made unavoidable casualty a proper point to claim.

10. The Newport Levee District admitted the error in foreclosing against the appellants' property, and deposited in the court the $30 which the appellees had paid the levee district for the deed; and the levee district asked the court to "take such action as accords with equity and fairness." The appellees resisted the petition of the appellants and sought to hold the property under their purchase, claiming laches, limitations, estoppel, and *res judicata* as to the payment. From a decree for appellees, comes this appeal.

Appellants rely on *Botts* v. *Stephen,* 203 Ark. 1031, 160 S. W. 2d 198, and *Wilkins* v. *Lenon,* 182 Ark. 953, 33 S. W. 2d 1093, and other similar cases to sustain their contention that the payment of the tax—whether before or after suit—was just as effective as a redemption after sale, and that the payment by the appellants destroyed the power to sell, and that, therefore, the foreclosure sale was void.

Appellees rely on *Pattison* v. *Smith,* 94 Ark. 588, 127 S. W. 983, and similar cases, to sustain the decree of the lower court. This case of *Pattison* v. *Smith* is a very strong case: notwithstanding the fact that Pattison paid his levee taxes for 1895 and 1896, still the levee district, by error, filed a foreclosure suit on the property for those years and obtained a decree of foreclosure. There was a sale and a deed to Smith after the period of redemption. When Pattison learned of the proceedings, he filed a suit in ejectment to recover his property from Smith, who defended the suit on the validity and regularity of the levee district foreclosure proceedings (just as appellees here defend). The Supreme Court, speaking by Mr. Justice FRAUENTHAL, said: that there was no misprision and no fraud; that the court had jurisdiction of the

subject-matter in the foreclosure suit and had made a finding of delinquency, in the payment; that even though the finding was a mistake, still it was not a fraud, and that the Pattison ejectment suit was a collateral attack on the foreclosure proceeding and must therefore fail. In short, Pattison lost his land even though he had paid the improvement taxes.

If the case of *Pattison* v. *Smith* were ruling here, then the decree of the lower court would have to be affirmed; but such is not the case. In the present case, the appellants have not made a *collateral* attack on the improvement district foreclosure decree, but have made a *direct* attack: for they filed a motion to set the judgment aside. As shown in the statement of facts heretofore, the appellants have filed this motion in the original foreclosure suit. In 31 Am. Jur. 204, the rule is stated as follows: "The distinction between a direct and collateral attack upon a judgment is sometimes based upon the purpose of the proceeding or action in which the attack is made. Under this distinction, an attack is regarded as direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and as collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment."

And again, the rule is stated: "The challenge of the integrity of a judgment in the action wherein the judgment is rendered, is regarded as a direct attack upon the judgment."

This same distinction is recognized by our court in the case of *Hooper* v. *Wist,* 138 Ark. 289, 211 S. W. 143. So, it is clear that the present appellants have made a direct attack on the foreclosure decree and the case of *Pattison* v. *Smith* is therefore clearly distinguished from the case at bar.

It remains for us to decide whether the appellants have shown a sufficient ground for setting aside the foreclosure decree under § 8246 of Pope's Digest, and we find that they have made proof of unavoidable casualty or misfortune, which is the seventh ground

listed in the statute. Even if the constructive fraud (which is the fourth ground) or the misprision (which is the third ground) were not sufficient, certainly there was an unavoidable casualty or misfortune which prevented the appellant from appearing or defending the suit. This § 8246 of Pope's Digest is § 571 of the Civil Code. In the Annotated Civil Code of Arkansas by T. D. Crawford, there are listed, on pages 444 and 445, over a score of cases where various facts and circumstances have been construed as constituting, or not constituting, unavoidable casualty within that section. In 31 Am. Jur. 283, in discussing unavoidable casualty, the rule is stated: "The relief may be obtained in such case where the party seeking it is in no default himself; the applicant must have exercised ordinary diligence to ascertain the facts by which it is claimed the party was surprised or prevented from presenting his case."

It was a misfortune or casualty that the clerk erroneously included the appellants' property in the list of the delinquent assessments. Likewise, it was unavoidable, as far as the appellants were concerned. They had paid their tax, they could not be expected to sit at the courthouse and look over the shoulder of the official to see that he made no mistake. As far as the appellants were concerned, the decree of foreclosure was unavoidable, and it was certainly a misfortune or casualty. The appellants, by their tenant, were holding up the flag of possession all the time. By the receipt, they had been lulled into a feeling of security that their taxes were paid. They certainly had a right to rely upon the integrity of the elected official. He was only human, and he made a mistake just as we all do. But it would be a hard court of equity that would penalize an innocent person for the innocent and unintentional omission of an officer as in the case at bar. Mr. Justice Wood, speaking for this court in the case of *Thweatt* v. *Grand Temple, etc., Knights & Daughters of Tabor,* 128 Ark. 269, 193 S. W. 508, said: " 'An act of the court shall prejudice no man, is a maxim founded upon justice and good sense,' says Mr. Broom. Broom's Legal Maxims, p. 99. And while the facts may not bring the present case tech-

nically within this ancient maxim, the principle it announces should, by analogy at least, be and is applied here. . . ." (See Broom's Legal Maxims, 9th Ed., p. 85.)

It, therefore, follows that the decree of the chancery court is reversed, and the cause is remanded with instructions to allow the appellants' petition, and to award the relief prayed, in accordance with this opinion.

Mr. Justice SMITH dissents.