Mable BUFORD, Administratrix of the Estate of
Matilda COTTON, Deceased, and Mable BUFORD,
Individually *v.* Rose T. Frazier MARTIN et al

73-196                                          505 S.W. 2d 489

Opinion delivered February 19, 1974

*Matthews, Purtle, Osterloh & Weber,* for appellant.

*Reinberger, Eilbott, Smith & Staten* and *Chambers & Chambers,* for appellees.

J. FRED JONES, Justice. This is an appeal by Mable Buford from a chancery court decree awarding to her only an undivided one-fifth interest in 80 acres of land rather than a fee simple title as a devisee under the will of Matilda Cotton. Matilda Cotton was one of the seven or eight children and surviving heirs at law of Robert Frazier who owned the 80 acre tract when he died intestate in 1905, also survived by his wife Bell. After Robert's death Bell and the children continued to live on the land until her death in 1919 or 1920. It appears that the surviving children and heirs of Robert and Bell Frazier were Sidney, Sullivan, Tilda, Ben, Bourbon, Adell and Rose. The record is not clear as to whether Ben and Bourbon are one and the same, but from the conclusion we reach in this case, that is immaterial.

Following the death of Bell Frazier in 1919 or 1920, Sidney continued to live on the land and acted as a father to the other children until they grew up and found homes of their own. Sidney was still living on the land at the time of his death in 1953. About two years after Sidney's death the house on the land burned and the land remained unoccupied and uncared for after that time. Matilda married C. T. Cotton and lived in Louisiana where she died testate and without issue in 1969, leaving her property in Arkansas by will to her niece, Mable Buford, who is the appellant in this case.

From 1919 through subsequent years, Bob, Sidney and Ben Frazier from time to time mortgaged their individual undivided interests in the land to secure their payment of personal indebtedness and most of the mortgages were satisfied of record. However, on June 28, 1924, Ben Frazier mortgaged his one-eighth undivided interest in the property to J. M.

Young, trustee for J. L. and D. M. Davis, to secure the payment of $750 due and payable on the first day of October, 1924. The indebtedness was not paid and suit on the note resulted in a foreclosure sale and J.L. Davis purchased Ben's interest in the property. On March 28, 1928, Davis filed suit against the remaining Frazier heirs for partition of the property. A partition and sale were decreed on November 8, 1928; the sale was conducted on December 12, 1928; the Frazier heirs collectively purchased the property at the partition sale and gave their promissory note to the Commissioner in payment of the amount due Davis. The note was for $222.87 due on or before March 12, 1929, and was secured by a lien on the land as fixed by the partition decree.

A commissioner's deed was issued to the Frazier heirs setting out their individual interests and the deed recited in part as follows:

"This conveyance is made however, subject to a lien upon said land and premises reserved by the undersigned as such Commissioner in Chancery, to secure the amount due upon the bond given by the parties of the second part for the 1/9th purchase money and costs as aforesaid."

This note was assigned by Commissioner Garner to Wade Kitchens, who had represented the Frazier heirs in the partition suit and, apparently through this procedure, Garner obtained from Kitchens the amount due Davis, and Kitchens held the note until it was well past due. In any event, on January 8, 1932, Wade Kitchens filed suit against the Frazier heirs to collect the $222.87 past due on the note and to foreclose the lien against the property. On May 14, 1932, a judgment was decreed against the resident makers of the note and the decree provided:

"[I]f said sum and interest thereon, herein adjudged to be due, shall not be paid within sixty days from this date, together with all costs herein adjudged to be paid by defendants, Sidney Frazier and Emma Moore, the Commissioner of this Court, hereinafter named, after he shall have advertised the time, terms and place of sale

for a period of twenty days . . . shall sell at the Easterly Door of the Courthouse of said County . . . [the property here involved]."

In the meantime, the property became delinquent for nonpayment of state taxes for the year 1929. W. H. Kitchens purchased the property at a clerk's tax sale on June 9, 1930, and deed was issued to W. H. Kitchens, Jr. on June 15, 1932. The property again became delinquent for nonpayment of the 1932 taxes and was forfeited to the state under two separate 40 acre calls on June 12, 1933. One of the 40 acre tracts was apparently redeemed by a stranger to this litigation. Certificate was issued on the other 40 December 31, 1935, and title was confirmed in the state. On June 11, 1936, the 40 acre tract was sold by the state to E. F. Johnson who in turn on April 20, 1937, transferred the title to W. H. Kitchens, Jr. by quitclaim deed.

It appears from the abstract of title, made a part of the record and from which we are forced to glean most of the facts, that no further action was apparently taken on Kitchens' judgment against the Fraziers until a commissioner's report of sale filed and approved May 2, 1939, in which a commissioner reported that pursuant to authority and directions contained in a decretal order rendered by the chancery court on January 24, 1939, he gave notice of the time and place of sale; that at the sale so made, W. H. Kitchens bid and offered the sum of $420 for the land and premises, and that being the highest bid the same was struck off and sold to him for that amount. A commissioner's deed dated and filed for record on May 2, 1939, was issued to W. H. Kitchens, Jr. and nothing else appears of record pertaining thereto until on March 8, 1944, W. H. Kitchens, Jr. and wife, by their attorney in fact, transferred the proper.y by quitclaim deed to C. T. Cotton and Tilda Cotton, his wife, jointly.

C. T. Cotton predeceased his wife Tilda and as already stated, Tilda died testate in 1969. Under her last will and testament the property here involved was devised to her niece, the appellant Mable Buford, who is a resident of Arkansas and who qualified as administratrix of the estate of Matilda Cotton with will annexed.

Mable Buford filed the present action against the other Frazier heirs alleging that she is the owner of the property involved; that the defendants claim some interest in it and she prayed that the title be quieted in her. Most of the testimony in the record and to which the record abstract is primarily devoted, pertains to the relationship of the parties and as already stated, the abstract of title was made a part of the record by stipulated agreement. The pertinent portions of the chancellor's findings and decree recite as follows:

"[T]he partition deed provided that a lien be created against said property to pay J. L. Davis for his one-ninth (1/9) undivided interest in said lands; that Sidney Frazier, Bob Frazier and Emma Moore executed a note to Ezra Garner, as Commissioner, for the payment of the amount due J. L. Davis, and the said Commissioner, at the request of J. L. Davis, assigned said note to Wade Kitchens; that Wade Kitchens then filed suit in 1932 against Sidney Frazier, Bob Frazier, Emma Moore, Cassie Murphy, Aliee Goodwin, Ada Bell Gilmore, Sullivan Frazier, Tilda Frazier Cotton and Rose T. King (which was Suit No. 4459, as reflected in the abstract), and said lands were sold, and W. H. Kitchens, Jr., son of, and law partner with Wade Kitchens, purchased said lands under said sale.

That this land was delinquent for non-payment of taxes for the year 1929 and sold to W. H. Kitchens, who assigned the certificate of sale to W. H. Kitchens, Jr. W. H. Kitchens, Jr. acquired a Clerk's Deed to said lands dated June 15, 1932; that W. H. Kitchens, Jr. executed a quitclaim deed to C. T. Cotton and Tilda Cotton, husband and wife, to said lands, reserving an undivided one-half (1/2) interest in and to the oil, gas and minerals.

* * *

That the purchase of the said lands at the partition sale was a new acquisition by the grantees; that when W. H. Kitchens, Jr. executed a quitclaim deed to C. T. Cotton and Tilda Cotton, the transaction amounted to a redemption of the lands for the benefit of the tenants in common.

That Sidney Frazier lived on the lands continuously from his parents' death until he died in 1953; that the house on the land burned a year or so later and the land has been wild and unimproved timber land ever since; that Tilda Cotton did not acquire title to her co-tenants' interest in said land.

That the title to the surface and one-half (1/2) of the oil, gas and minerals are now owned as follows: Mable Buford, an undivided 1/5 interest, Rose T. Frazier Martin, an undivided 1/5 interest, Cassie Sigh, an undivided 1/15 interest, Alice Bagsby, an undivided 1/15 interest, Adda Bell Garrison, an undivided 1/15 interest, Heirs of Emma Frazier Moore, deceased, an undivided 1/15 interest, Barbara Jean Strong, an undivided 1/5 interest.

IT IS, THEREFORE, CONSIDERED, ORDERED and DECREED that the title to the surface, together with an undivided one-half (1/2) of the oil, gas and minerals be and same is hereby vested and quieted in the parties in the proportions as set out in the preceding paragraph."

On her appeal to this court Mable Buford has designated the points she relies on as follows:

"The court erred in holding the purchase at the foreclosure sale in 1929 created a tenancy in common.

The court erred in holding the purchase at the partition sale was a new acquisition by grantees.

The court erred in finding that the purchase of the property by C. T. Cotton and Matilda Cotton was a redemption for the others.

The court erred in not holding that Matilda Cotton was the sole legal and equitable owner of the property when she died in 1969."

The appellant cites no law and advances little argument in support of her first two contentions, but we consider it unnecessary to discuss these points because our decision must turn, not on the Davis foreclosure sale or his partition sale,

but on the foreclosure of the lien impressed on the property in the partition proceedings to secure the note given the commissioner in chancery by some of the heirs in partial payment of the amount they bid on the property at the time it was sold to them at the partition sale.

We agree with the appellant's third and fourth contentions. By assignment of the note Kitchens simply became a holder in due course and at no time was he a tenant in common with the Frazier heirs. The note was long past due when in 1932 Kitchens filed suit on the note and obtained judgment. The judgment decree provided that if the judgment be not paid within 60 days, the land would be sold under the lien to satisfy the judgment. The judgment was not paid so the property was sold under the lien foreclosure sale on January 14, 1939, and was purchased at the foreclosure sale by Wade Kitchens, Jr. Wade Kitchens, Jr. held title to the property until he conveyed it to C. T. Cotton and Matilda Cotton on March 8, 1944, a period of almost five years.

It is difficult to follow the appellees' reasoning as set out in their brief. The heart of their contention and the theory apparently accepted by the chancellor, is set out in their brief as follows:

"The Appellees and the Appellant's testator in 1929 were tenants in common, subject to a lien secured by a note. Wade Kitchens, assignee of the note and former attorney for the Appellees in the partitioning suit, filed suit and received a favorable decree on May 2, 1932, but the property was not sold pursuant to the decree until 1939, when W. H. Kitchens, Jr. purchased it.

The Appellees do not claim a redemption based on the 1929 sale or any subsequent conveyance in the chain of title originating or continuing through it. Thus, the Appellant is correct when at page 32 of her brief she states, 'this was not a tax sale and there were no redemption rights.' The appellees do claim a redemption based on the 1930 tax sale for the 1929 taxes and

the 1933 tax sale for 1932 taxes. The Appellees contend that the lien assigned to Wade Kitchens was also terminated along with the Appellees' interests under the 1929 Commissioner's Deed by the tax sales in 1930 and 1933. In fact, the Appellant, at pages 30 and 31 of her brief, states:

'The property was delinquent for 1929 taxes. W. H. Kitchens purchased and then assigned his certificate to W. H. Kitchens, Jr., who acquired a Deed on June 15, 1932 (Page 75 Abstract of Title). On June 12, 1933, the property was sold for the 1932 taxes. The State of Arkansas was certified as the title owner on December 31, 1935.'

. . . The Appellees do contend that the purchase by Matilda Cotton and C. T. Cotton in 1944 of the chain of title originating out of the tax sales was a redemption. Matilda Cotton and C. T. Cotton purchased the property from W. H. Kitchens, Jr., whose only valid title rests on the tax sales."

The crux of the appellees' contention seems to be that the note and security which were assigned to Wade Kitchens by the commissioner in chancery, were terminated and rendered void by the 1930 and 1933 tax sales. Neither party cites any authority that would enlighten us on this contention and we have found none. In other words, we have simply found no law and none has been cited to us which holds that a tax forfeiture voids a prior mortgage or lien to secure a prior indebtedness. It would appear that if Kitchens' purchase at the tax sale amounted to a redemption at all, there would be no question that he would have a right to make such redemption not only for the protection of the co-tenant owners and his debtors, but for the protection of his own lien as security for the debt they owed him.

Assuming that the tax sales to Kitchens only amounted to redemptions, it appears obvious that the Frazier heirs could not have cleared their title of the indebtedness and lien which they had placed against it without paying the indebtedness which the lien secured. On the other hand, if the tax sales to Kitchens placed good title in him, he was not a

co-tenant with the Frazier heirs and their remedy would have been by attack on the validity of the tax sales. In any event, the Frazier heirs could have had no more than a right of redemption from Kitchens, and the record reveals no effort to redeem between the dates of the tax sales and the date of Kitchens' purchase at the foreclosure sale.

The record pertaining to the suit on the note by Kitchens culminating in his purchase of the property at the 1939 foreclosure sale indicates proper and legal service on all parties concerned. Indeed the appellees do not question the validity of the 1939 foreclosure sale nor as for that matter, the validity of Kitchens' title thereunder, except as it is affected by the tax forfeitures and sales.

We are of the opinion that C. T. and Tilda Cotton had a right to purchase the property from Kitchens (after he had held title to it for approximately five years) and that in doing so, their purchase amounted to a purchase of the title in fee and not a redemption for the benefit of the remaining Frazier heirs and former tenants in common. Even if Kitchens had been a co-tenant with the Cottons and the appellees, such co-tenancy would not necessarily have prevented Mr. and Mrs. Cotton from purchasing the property for their own benefit at a bona fide public judicial sale. In 86 C.J.S., Tenancy in Common, § 60 (1), it is stated:

> "A cotenant may purchase for his own benefit at a bona fide public judicial sale, although the purchase will inure to the benefit of the cotenants where circumstances exist rendering the sale inequitable as to them."

In the case at bar Matilda Cotton did not purchase at the foreclosure sale and she was not a co-tenant with W. H. Kitchens, Jr. Again in 86 C.J.S., Tenancy in Common, § 60 (3), it is stated:

> "Where a cotenancy has been extinguished by a judicial sale of the property, the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or agreement to acquire it for the common benefit."

Of course, there was no agreement or fraud alleged or proven in this case. Section 60 (3), *supra*, continues:

> "Where a cotenancy has been extinguished by a judicial sale of the property, as on foreclosure and expiration of the period of redemption, it has been held that the rule precluding a cotenant from acquiring a title to the common property for his own benefit does not apply in the absence of fraud or an agreement to acquire it for the common benefit. . . . "

In the case of *Sewell* v. *Reed*, 189 Ark. 50, 71 S.W. 2d 191, Fannie Reed died intestate seized and possessed of land in Ouachita County and survived by several children as her sole surviving heirs. The property was sold by the administrator of the estate in order to pay debts. A Mr. Chandler bought the property at the administrator's sale and an administrator's deed was executed and delivered to him. About ten years after Chandler purchased at the administrator's sale, he executed a quitclaim deed conveying the property to Nannie Berry, a daughter of Fannie Reed, and one of the former co-tenants with her brothers and sisters. The remaining heirs of Fannie Reed filed suit alleging that they were tenants in common with the defendant heirs of Nannie Berry, who was then deceased. They prayed for an accounting of the income derived from the property; for a partition of the land between them and the defendant co-tenants and for other relief. The trial court, apparently relying on *Brittin* v. *Handy*, 20 Ark. 381, and subsequent like decisions of this court involving purchases by persons for their own use when they occupy a position of trust or confidence in relation to the property purchased, or where they have a duty to perform which is inconsistent with the character as purchaser, ruled in favor of the petitioners. In reversing the chancery decree, this court said:

> "There was no relationship of trust existing between Nannie Berry and her brothers and sisters, nor any duty to discharge the debt due by the intestate. She was not the purchaser at the administrator's sale, but from the

---

[1]The period of redemption from a mortgage foreclosure sale is one year in Arkansas. Ark. Stat. Ann. § 51-1111 (Repl. 1971).

purchaser at that sale, and she bought from him the lands 10 years subsequent to the administrator's sale. By reason of the sale by the administrator, an outstanding title was created, and, although Nannie Berry had been a tenant in common of her brothers and sisters subsequent to the death of Fannie Reed, their mother, and preceding their divesture of title by such sale, her purchase of the same from Chandler was not void, nor did that interest then acquired vest in her cotenants."

We are of the opinion, and so hold in the case at bar, that at the commissioner's sale to W. H. Kitchens, Jr. an outstanding title was created, and, although Matilda Cotton had been a tenant in common with her brothers and sisters subsequent to the death of their father Robert Frazier and preceding their divesture of title by such sale, her purchase of the same from Kitchens was not void, nor did that interest then acquired vest in her co-tenants.

We see no reason to discuss the cases pertaining to the right of redemption under Ark. Stat. Ann. § 51-1111 (Repl. 1971) because there is no evidence of any effort to redeem from the foreclosure sale in this case within the statutory period. Furthermore, the parties seem to agree that a redemption from the foreclosure sale is not contended or involved in this case. We conclude, therefore, from the evidence in the record before us, that upon the foreclosure sale to Kitchens the co-tenancy in the property terminated. The co-tenants had one year to redeem in the absence of fraud or agreement and that they did not do so. C. T. Cotton and Matilda Cotton purchased the property in their own names and for their own benefit and such purchase did not inure to the benefit of Matilda's former co-tenants. The decree of the chancery court is reversed and this cause remanded for the entry of a decree not inconsistent with this opinion.

Reversed and remanded.