Harold S. PURSER *v.* CORPUS CHRISTI STATE NATIONAL BANK

73-308                                                    508 S.W. 2d 549

Opinion delivered April 29, 1974
[Rehearing denied May 28, 1974.]

454

*Sam Goodkin*, for appellant.

*Bethell, Callaway & Robertson*, for appellee.

JOHN A. FOGLEMAN, Justice. This is an appeal from an order of the Sebastian County Circuit Court striking appellant's counterclaim and setoff in an action brought by appellee under Ark. Stat. Ann. § 29-801, et seq. (Repl. 1962), the Uniform Enforcement of Foreign Judgments Act, to register an in personam default judgment rendered against appellant by a Texas court, August 29, 1972, after service pursuant to Article 2031b, Texas Revised Civil Statutes. The judgment, in the amount of $72,825.33 for principal, interest and attorney's fees, was based on certain past due and unpaid promissory notes, executed by appellant and payable to appellee.

On February 14, 1973, appellee filed a Petition for Registration of Foreign Judgment in the Sebastian County Circuit Court, alleging that appellee had obtained the Texas judgment, an authenticated copy of which was attached, and that it remained unsatisfied. Summons and a copy of the petition were served on appellant that same day. Appellant filed an answer denying the jurisdiction of the Texas court and a counterclaim and setoff which sought $75,000 compensatory damages for conversion of appellant's business and assets and $100,000 compensatory damages and $100,000 punitive damages for malicious prosecution. These torts were alleged to have been committed in the State of Texas, where appellant then had resided and engaged in business. The appellee responded by filing a motion to quash the counterclaim and setoff alleging that the Sebastian Circuit Court lacked jurisdiction over the subject matter and the parties. On September 13, 1973, the circuit judge sustained the motion and ordered the counterclaim and setoff dismissed without prejudice retaining jurisdiction over appellee's petition for registration of the foreign judgment. This appeal followed.

Before reaching the merits of appellant's contention that the trial court erred in dismissing his counterclaim and setoff,

it is necessary to consider appellee's contention that the ruling by the trial judge is not an appealable order. For the order of a trial court to be appealable, it must be final. Ark. Stat. Ann. § 27-2101 (Repl. 1962); *Allred v. National Old Line Insurance Co.*, 245 Ark. 893, 435 S.W. 2d 104. A final judgment is one which discharges a party from the action, operates to divest some right so as to put it beyond the power of the court to place the parties in their former condition after the expiration of the term and dismisses him from court or concludes his rights to the subject matter in controversy. *McConnell & Son v. Sadle*, 248 Ark. 1182, 455 S.W. 2d 880; *Johnson v. Johnson*, 243 Ark. 656, 421 S.W. 2d 605; *Fox v. Pinson*, 177 Ark. 381, 6 S.W. 2d 518; *Flanagan v. Drainage District No. 17*, 176 Ark. 31, 2 S.W. 2d 70.

The general rule that the dismissal of a counterclaim or setoff is not directly appealable is subject to exception where, under the circumstances of the case, the order has the effect of a final decision. *Fox v. Pinson*, supra; 4 Am. Jur. 2d, Appeal & Error, §§ 98, 100. In determining what constitutes a final order, the requirements of finality must be given a practical rather than a technical approach. *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S. Ct. 308, 13 L. Ed. 2d 199 (1964). This is necessary because the question is sometimes so close that a decision either way can be supported with equally forceful arguments, making it impossible to devise a formula to resolve cases coming within the "twilight zone." This is really the approach taken in allowing exceptions to the rule that dismissal of a counterclaim is not appealable.

It is obvious that any relief to which appellant might be entitled in the courts of Arkansas on his counterclaim is effectively foreclosed by its dismissal, even without prejudice. It does not appear that there are any allegations which would ever justify service on appellee or the exercise of jurisdiction over it in Arkansas under the Uniform Interstate and International Procedure Act [Ark. Stat. Ann. § 27-2501, et seq. (Supp. 1973)]. This is the sort of case, then, that calls upon us to be practical rather than technical in testing the finality of the order dismissing the counterclaim. We took this kind of approach recently when we assumed that an order dismissing a counterclaim was appealable in *Reynolds v. Bakem Credit Union*, 255 Ark. 322, 500 S.W. 2d 355. In so doing, we referred to cases in which the practical effect of an order, unreviewed,

was the death knell of a party's attempt to litigate his claim. See *Eisen* v. *Carlisle & Jacquelin,* 370 F. 2d 119 (2nd Cir. 1966); *Reader* v. *Magma-Superior Copper Co.,* 108 Ariz. 186, 494 P. 2d 708 (1972); *Miles* v. *N. J. Motors,* 32 Ohio App. 2d 350, 291 N. E. 2d 758 (1972).

We find great similarity between this case and *Fox* v. *Pinson,* supra. In *Fox* this court had reversed a mortgage foreclosure decree and remanded the cause for further proceedings. See *Fox* v. *Pinson,* 172 Ark. 449, 289 S.W. 329. Appellant then filed a "cross-complaint" against the plaintiffs (appellees here) for loss of rental value, wrongful conversion of property and for the value of a building on the property allegedly destroyed by appellees while in possession of the land. Appellant sought $74,640 in damages, admitted that $11,500, representing 23 promissory notes then due, should be set off against her recovery and prayed judgment for the balance. Appellees demurred to the "cross-complaint." After appellant refused to plead further, the court sustained the demurrer and dismissed the cross-complaint. Appellant sought to appeal the dismissal. We held that the dismissal effectively concluded appellant's rights to the subject matter in controversy and was therefore an appealable order. When we view the situation at hand practically, we must say that the dismissal of appellant's counterclaim, in effect, terminated a severable branch of the case and was a final and appealable order.

In deciding whether a counterclaim and setoff for damages arising from allegedly tortious conduct of appellee in a foreign jurisdiction may be pleaded in an action to register a foreign judgment in favor of appellee and against appellant, it is necessary to look to both the compulsory counterclaim statute [Ark. Stat. Ann. § 27-1121 (Repl. 1962)] and the Uniform Enforcement of Foreign Judgments Act [Ark. Stat. Ann. § 29-801, et seq. (Repl. 1962)] and ascertain the purpose of each of those acts.

The salient purpose of the Uniform Act is to provide for a summary judgment procedure in which a party in whose favor a judgment has been rendered may enforce that judgment promptly in any jurisdiction where the judgment debtor can be found, thereby enabling the judgment creditor to obtain relief in an expeditious manner. Ark. Stat. Ann. § 29-806

(Repl. 1962); Commissioners' Note to the Uniform Act, Uniform Laws Annotated, Vol. 9A, p. 476; Leflar, The New Uniform Judgments Act, 3 Ark. L. Rev. 402, 415; *Nunez* v. *O. K. Processors*, 238 Ark. 429, 382 S.W. 2d 384. The Uniform Act provides that any defense, setoff or counterclaim which, under the laws of this state, may be asserted by the defendant in an action on a foreign judgment may be raised in the proceedings pursuant to the act. Ark. Stat. Ann. § 29-808 (Repl. 1962).

Dr. Leflar gave us the historical background of the act. In speaking of the rejection of a pure registration system and the adoption of the summary judgment procedure by the National Conference of Commissioners on Uniform State Laws, he said:

> The alternative solution which naturally suggested itself was a summary judgment procedure. A few states had already made such a procedure available for suits on foreign judgments, in connection with comprehensive summary judgment enactments, but a number of states which had set up summary judgment procedures for some purposes had not specifically included actions on foreign judgments among the causes of action for which the summary procedure was provided.

> Analysis of the problem indicated that a summary procedure devised specially for rendering new judgments on extrastate judgments might be more speedy and efficacious in operation than summary judgment procedures usually are, yet just as fair to all concerned. Further, it became apparent that most of the advantages of a direct registration procedure could be achieved under such a quick judgment procedure. Accordingly, at the Philadelphia meeting of the National Conference of Commissioners on Uniform State Laws in October, 1946, when alternative tentative drafts of a proposed act were presented to the Conference, one prescribing a registration system and the other a summary judgment procedure, preference for the latter was indicated and this preference was made final by a formal vote of the Conference at the Cleveland meeting in 1947. Then at the Seattle meeting in September, 1948, a final draft of an act drawn on the summary judgment theory

was adopted, the following week was approved by the House of Delegates of the American Bar Association, and thus was formally promulgated and made available for adoption by the states.

This section of the act was intended to do no more than recognize that a judgment debtor should have the right to raise any defense, counterclaim or cross-complaint which, under the law of this state, he might have asserted in the pre-existing procedure by which a judgment creditor in a foreign state had to bring a suit on it in Arkansas in order to carry it into effect here. See Leflar, The New Uniform Foreign Judgments Act, 3 Ark. L. Rev. 402, 410, 412. Dr. Leflar put the matter in proper perspective, saying:

> The judgment debtor has had his notice and opportunity for hearing in the first state; traditional practice has never permitted him to litigate anew defenses that were available to him all along. These are foreclosed. The only defenses still available to the judgment debtor are satisfaction of the judgment, absence of jurisdiction in the court rendering the judgment, and possibly certain types of fraud in the procurement of the judgment. So long as it remains possible for him to present these defenses in some manner and at some stage in the proceedings before final enforcement of the judgment against him, his interests are adequately protected. The procedure of a new suit brought against him would be merely one method, but by no means the only method, whereby he could be given ample opportunity to present these defenses if they in fact exist. If they do not exist, the debtor loses nothing. The lack of opportunity to present other defenses is no loss, since no other defenses are available to him in any event. The only important thing is that he be given a fair chance to present defenses that actually exist. The essence of this theory is that due process need not be satisfied separately in each state that has anything to do with the rendition or enforcement of a judgment; that it is enough that due process be satisfied in one state, after which the action of another state in furtherance of the already valid judgment is essentially administrative in character, with no new notice and hearing necessary.

In all the discussion of the proposed act among the Commissioners, little if any doubt was ultimately cast on the soundness of the analysis just stated.

Arkansas promptly recognized the need for such a summary procedure by adopting Act 34 of 1949. [Ark. Stat. Ann. § 29-801, et seq. (Repl. 1962)].

To permit defenses or counterclaims which would not have been theretofore available in a suit on a foreign judgment would be subversive of the whole legislative scheme. Thus, we must ascertain whether, under our decisions, a counterclaim and setoff such as the one in this case may be pleaded as a defense to an action on a foreign judgment.

We have long recognized that a judgment debtor has a right to defend against a foreign judgment sought to be enforced in the courts of this state, but not on defenses that could have been made in the action in which the judgment was rendered. *Peel* v. *January*, 35 Ark. 331, *Stewart* v. *Budd*, 169 Ark. 363, 275 S.W. 748. Under the full faith and credit clause of the United States Constitution, Art. 4, § 1, such a judgment is as conclusive on collateral attack, except for the defenses of fraud in the procurement of the judgment or want of jurisdiction in the court rendering it, as a domestic judgment would be. *Phillips* v. *Phillips*, 224 Ark. 225, 272 S.W. 2d 433; *Lewis* v. *United Order of Good Samaritans*, 182 Ark. 914, 33 S.W. 2d 53. Furthermore, a judgment entered by default is entitled to full faith and credit and is as conclusive against collateral attack as any other judgment. *Holbein* v. *Rigot*, 245 So. 2d 57 (Fla. 1971); *American Institute of Marketing Systems, Inc.* v. *Don Rhoades Corporation*, 82 N. M. 659, 486 P. 2d 68 (1971); *Wagner* v. *Cholley*, 181 Md. 411, 31 A. 2d 852 (1943); *Fred Miller Brewing Co.* v. *Capital Ins. Co.*, 111 Iowa 590, 82 N.W. 1023 (1900); *Parker* v. *Hoefer*, 2 N.Y. 2d 612, 162 N.E. 2d 194 (1957); *Dunn* v. *Royal Brothers Company*, 111 Ga. App. 322, 141 S.E. 2d 546 (1965); *Gibson* v. *Epps*, 352 S.W. 2d 45 (Mo. App. 1962). See *Buford & Pugh* v. *Kirkpatrick*, 13 Ark. 33. Since appellant does not allege fraud or lack of jurisdiction in his counterclaim and setoff, the defense asserted by it may not be maintained.

A direct attack on a judgment is an attempt to amend it, correct it, reaffirm it, vacate it, or enjoin its execution in a

proceeding instituted for that purpose. *Sewell* v. *Reed*, 189 Ark. 50, 71 S.W. 2d 191; *Woods* v. *Quarles*, 178 Ark. 1158, 13 S.W. 2d 617. An attack is direct where the proceeding in which it is made is brought for the purpose of impeaching or overturning the judgment, and collateral if made in any manner other than by a proceeding the very purpose of which is to impeach or overturn the judgment. *Brooks* v. *Baker*, 208 Ark. 654, 187 S.W. 2d 169; *Wilder* v. *Harris*, 205 Ark. 341, 168 S.W. 2d 804. An action which contemplates some other relief or result is a collateral attack. *Sewell* v. *Reed*, supra; *Brooks* v. *Baker*, supra. Since appellant's pleading does not seek to directly overturn or modify the original judgment, it constitutes a collateral attack on the judgment which, absent allegations of fraud or lack of jurisdiction, either of the subject matter or of the parties, may not be raised in the registration proceedings.

Appellant also contends that our compulsory counterclaim statute [Ark. Stat. Ann. § 27-1121 (Repl. 1962)] applies to any action brought in an Arkansas court and would not only allow, but require, appellant to assert his counterclaim and setoff. We do not agree. In this case appellant is asserting the counterclaim and setoff, not as a defense to the original cause of action, but in a proceeding brought to enforce a judgment rendered in the original suit. We find this distinction to be significant. The purpose of the compulsory counterclaim statute was to settle all issues between the parties in one and the same lawsuit, thereby avoiding multiplicity of actions. *Martin* v. *Romes*, 249 Ark. 927, 462 S.W. 2d 460. However, the statute applies only to a cause of action which the defendant could maintain as an independent suit. *Coats* v. *Milner*, 134 Ark. 311, 203 S.W. 701.

The cause of action on which this counterclaim and setoff was founded arose from allegedly tortious conduct of the appellee in Texas. The facts do not indicate any connection whatsoever with Arkansas until the time of the attempted registration of the judgment. The acts in Texas were not of such a nature that the defendant could maintain a separate cause of action in the Arkansas courts. To apply the compulsory counterclaim statute to these facts would be subversive of the salutary intent of the Uniform Act to provide for a prompt summary procedure to register such judgments without furthering the purposes of the counterclaim statute to prevent piecemeal, multiplicitous litigation in Arkansas

courts. It might well pose constitutional questions under the full faith and credit clause of the United States Constitution. Furthermore, the compulsory counterclaim statute was passed in 1935, so the Ark. Stat. § 29-808 would supersede it, insofar as foreign judgment registration procedures are concerned, if there is any conflict.

The order dismissing the counterclaim and setoff is affirmed.