GROVER L. MARTIN *v.* JOHNNY L. ROMES

5-5421                                      462 S. W. 2d 460

Opinion delivered February 1, 1971

*Guy H. Jones, Phil Stratton* and *Guy Jones, Jr.,* for appellant.

*John T. Haskins, James H. Larrison, Jr.* and *D. Michael Huckabay,* for appellee.

J. FRED JONES, Justice. On March 5, 1969, John L. Romes filed suit in the Pulaski County Circuit Court against Grover L. Martin alleging personal injuries and property damage as the result of Martin's negligence in the operation of an automobile and in causing it to collide with Romes' automobile. Romes alleged damages and prayed judgment in the amounts of $35,000 for personal injuries and $500 for property damage to his automobile.

On March 17, 1969, Martin filed an answer of general denial and alleged that whatever damage Romes sustained in the accident was due to Romes' own negligence. On November 12, 1969, Martin's answer was amended alleging specific acts of negligence on the part of Romes; and specifically pleading Romes' negligence as a bar to, or in diminution of, any amount in damages he might otherwise be entitled to receive. On November 24, 1969, through separate and additional counsel, Martin filed a counterclaim specifically alleging numerous acts of negligence on the part of Romes in the operation of his automobile, and that such negligence was the proximate cause of the collision, resulting in personal injuries to Martin by which he was damaged in the amount of $50,000.

On November 26, 1969, Romes amended his complaint lowering the amount of his alleged property damage to $50. The case was tried before a jury on December 2, 1969, with the regularly elected circuit judge, the Honorable Warren Wood, presiding. Apparently, after the case was fully tried and the jury retired, or was ready to retire, to consider its verdict, it became necessary for the presiding judge to leave and the Honorable Jack Lessenberry, an attorney in attendance, was selected to continue as presiding judge. The record indicates that the only apparent duties remaining for the trial judge when Judge Lessenberry assumed the bench, were to receive the verdict of the jury and enter judgment.

The jury was unable to agree on a verdict and upon being advised that the decision stood at 7 to 5, Judge Lessenberry, with the agreement of counsel, gave to the jury AMI instruction No. 2303 and requested further deliberation in an effort to reach a verdict. At this point the attorney for Martin on his counterclaim, pointed out to the court that the jury had retired at 3:20 and returned to the courtroom at 5:10, and the attorney made an oral motion for a mistrial. The attorney representing Martin on his general denial, and the attorney representing Romes on his complaint, objected to

granting the mistrial. Judge Lessenberry stated that he would adhere to Judge Wood's earlier rule in regard to a continuance requested by the attorney representing Martin on counterclaim, and he denied the motion for mistrial.

The record then shows that the jury foreman, Mr. McIntire, returned to the courtroom and reported that the jury was still unable to agree on a verdict. Upon inquiry, Mr. McIntire advised that the jury division now stood 8 to 4 and stated that he was convinced that it was not going to change. Following conference with counsel, and apparently in recognition that some progress had been made, the court again had the foreman return to the jury room with the request that the jury continue in its attempt to reach a verdict. The record shows that the entire jury then came back into the courtroom and the following transpired with all the jury present:

"THE COURT: Mr. Foreman, have you been able to reach a verdict?

MR. McINTIRE: Have not.

THE COURT: Ladies and gentlemen, I want to thank you for participating in this trial for the past two days. I think each of you conscientiously worked toward a verdict and voted your best judgment. I am going to discharge you now with a request and some instructions. I understand that there are six of you who are on Judge Digby's jury. . .

MR. McINTIRE: We have reached part of a verdict.

THE COURT: Just a moment. Would you give it to the bailiff?

MR. HUCKABAY: Your Honor, have you declared a mistrial yet?

THE COURT: Mr. John McIntire signed this verdict as foreman. 'We, the jury, find for the plaintiff, Johnny Romes against the counterclaim of Grover R. Martin' and it is signed by eight others. Total of nine. All right, you will be discharged.

MR. WHETSTONE: Would you hold them just a minute and see what this effect—

THE COURT: Whatever it affects I don't think it's going to involve the jury. I am not familiar with the pleadings and I can't tell you what the effect is. Apparently they resolved part of a complicated case. I don't think there would be—

MR. HUCKABAY: I think based on this verdict—

THE COURT: You are familiar with the pleadings.

MR. HUCKABAY: Based on this, I think it's an incomplete verdict.

THE COURT: I am inclined to think that. I will declare a mistrial. I have so done. And I thank you again.

MR. WHETSTONE: But you declared a mistrial. I'm not consenting. You're doing it over our objection.

THE COURT: All right. Your objections are noted. Anything else from counsel: Thank you again, ladies and gentlemen.''

On January 16, 1970, judgment was entered by the regular trial judge as follows:

"On this date this matter comes on to be heard, the plaintiff appearing in person and by his attorney, Mike Huckabay, and the defendant appearing in person and by his attorneys, Bernard Whetstone and Bud Whetstone, and the counterclaimant being

the same person as the defendant, appearing in person and by his attorney, Guy Jones, Jr., and all parties announced ready for trial, whereupon 12 of the regular panel of petit jurors of this court were duly selected, impaneled and sworn, according to law, to try the issues of fact arising herein; and after having heard all the evidence adduced, the instructions of the Court and the argument of counsel, the jury retired to consider its verdict, and after deliberating thereon returned into Court reporting that no verdict could be reached, whereupon the Court read to the jury AMI instruction 2303 and ordered the jury to again retire to the jury room. After further deliberation the jury returned into the Court with the following verdict:

'We, the jury, find for the plaintiff, Johnny L. Romes, as against the counterclaim of Grover L. Martin.

/s/ John O. McIntire
    Foreman
    Mrs. Edwin Mendell
    Ray Harris
    G. F. Peceny
    William F. Perry
    Melba Presley
    Edward Cobbs
    Mary Nichols
    Irene Webb.'

The jury advised the Court that it was unable to reach a verdict with reference to the other issues submitted to them.

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that defendant, Grover L. Martin, take nothing by reason of his counterclaim and said counterclaim is hereby dismissed with prejudice as against the counter-defendant, Johnny L. Romes, and said Johnny L. Romes is hereby awarded his costs in connection with said counterclaim;

that a mistrial be, and it is hereby declared as to the issues relating to the plaintiff's Complaint against the defendant and this cause will be placed on the trial docket for a re-trial."

Martin's attorney on the counterclaim filed a motion to set aside and vacate the judgment and to declare a mistrial as to Martin. While the partial record contains no formal order pertaining to the motion, Romes does not question that it was denied. On appeal to this court Martin relies on the following points:

"The Trial Court erroneously accepted the verdict from the jury.

The Trial Court erred in entering judgment.

The Trial Court erred in overruling defendant's motion to arrest judgment and grant a mistrial.

The Trial Court erred in overruling defendant's motion to vacate and set aside the judgment."

We agree with the jury foreman that only a *part* of a verdict was reached, we agree with the presiding judge that the jury apparently only resolved *part* of a complicated case, we agree with Rome's attorney and the presiding judge that the verdict was incomplete, and we agree with the appellant Martin that a mistrial should have been declared on his counterclaim as well as on the complaint. As a matter of fact, it is apparent from the record before us that a mistrial *was* declared as to all the parties by the presiding judge for the reason that the verdict was incomplete. For emphasis we recopy the record on this point as follows:

"MR. HUCKABAY: Based on this, I think it's an incomplete verdict.

THE COURT: I am inclined to think that. I will declare a mistrial. *I have so done.* And [to the jury] I thank you again.

MR. WHETSTONE: But you declared a mistrial. I'm not consenting. You're doing it over our objection.

THE COURT: All right. Your objections are noted. Anything else from counsel? Thank you again, ladies and gentlemen.

THEREUPON, the jury was released for the day." (Emphasis supplied).

Under Ark. Stat. Ann. § 27-1121 (Repl. 1962) providing for the form and contents of an answer and under the third and fourth provisions of what the answer should contain, the statute reads as follows:

"Third: A statement of any new matter constituting a defense, counter-claim or set off, in ordinary and concise language, without repetition.

Fourth: In addition to the general denial above provided for, the defendant must set out in his answer as many grounds of defense, counter-claim or set off, whether legal or equitable, as he shall have. Each shall be distinctly stated in a separate paragraph, and numbered. The several defenses must refer to the causes of action which they are intended to answer in a manner by which they may be intelligibly distinguished."

Ark. Stat. Ann. § 27-1123 (Repl. 1962) defines counterclaim in the following language:

"The counterclaim mentioned in this chapter [§§ 27-1121—27-1125, 27-1129, 27-1130] may be any cause of action in favor of the defendants, or some of them against the plaintiffs or some of them."

Apparently, the appellee confuses the term "counterclaim" when used as a noun with the same term when used as a verb. He apparently considers the counterclaim defined in § 27-1123 as being "any cause of action in favor of the defendants, or some of them against the

plaintiffs or some of them," regardless of when and how it is asserted. But the counterclaim defined in § 27-1123 plainly states that it is the counterclaim mentioned in §§ 27-1121—27-1125, 27-1129, 27-1130. It is true that any cause of action in favor of the defendants, or some of them against the plaintiffs or some of them, may constitute a counterclaim or be asserted in a counterclaim, but it must be pleaded in answer to the original complaint as permitted and as required in the third and fourth paragraphs of § 27-1121, supra. *Shrieves* v. *Yarbrough,* 220 Ark. 256, 247 S. W. 2d 193; *Olmstead* v. *Rosedale Bldg. & Supply,* 229 Ark. 61, 313 S. W. 2d 235. If the law was otherwise, the asserted claim would become the original claim to be properly asserted in a complaint and would not be a *counter-*claim at all. The very purpose of the counterclaim is to settle all issues between the parties in one and the same lawsuit and thereby avoid multiplicity of actions. The *Shrieves* and *Olmstead* cases, supra.

In *Coats* v. *Milner,* 134 Ark. 311, 203 S. W. 701 (1918), in construing the effect of Act 267 of the Acts of 1917, this court said:

"Any suit which the defendant could maintain as an independent cause of action is by this amendatory act made a proper subject-matter for a counterclaim. In other words, the manifest purpose of the Legislature was to permit persons who have gone to law to settle, in a single suit, all matters in dispute between them, whether the respective causes of action grow out of the same, or different, contracts, or whether they arise upon contract or arise out of some tort."

Later, in the 1925 case of *Church* v. *Jones,* 167 Ark. 326, 268 S. W. 7, this court reaffirmed the purpose of the counterclaim as laid down in *Coats* v. *Milner,* supra, in the following language:

"In that case the court said that the manifest purpose of the Legislature in defining a counterclaim

was to permit persons who have gone to law to settle, in a single suit, all matters in dispute between them, whether the respective causes of action grow out of the same or different contracts or whether they arise upon contract or arise out of some tort."

In 116 A. L. R. at page 829 is found the following statement:

"In an action in which a money judgment is sought, a verdict which fails to state specifically, or which is indefinite as to, the amount to which the jury deems the plaintiff to be entitled on his cause of action, or the amount which defendant should recover in the event that the verdict finds in his favor on his counterclaim or cross complaint, or a verdict which affirmatively states that the party in whose favor the verdict is rendered is entitled to no amount, is not one on which a valid judgment can be entered."

The statutory counterclaim evolved from recoupment and setoff and its purpose is to permit, and in Arkansas to require, that the controversy between the parties be settled in one action and thus avoid the multiplicity of suits. 10 A. L. R. 2d 1168, "Tort Counterclaim in Tort Action"; *Gillespie* v. *Hunt,* 214 Ind. 229, 14 N. E. 2d 1015.

In the case at bar the parties have cited no case, and we have found none, in which a trial court has entered a judgment in conformity with part of a jury verdict such as we have in this case. Our own statute, Ark. Stat. Ann. § 29-101 (Repl. 1962), defines the judgment as "the final determination of the rights of the parties in an action," and certainly the rights of the parties have not been finally determined in this case. We have no way of knowing whether the jury based its partial verdict on evidence that Martin sustained no damage; or that he was more negligent than Romes; or that Romes was not negligent at all; or that Romes' negligence was not the proximate cause of Martin's damages. It is entirely possible that

the evidence favorable and unfavorable to both parties may be quite different on retrial. Certainly a defendant has the right to cross-examine the plaintiff's witnesses at any trial, and we can conceive of such evidence, from the plaintiff's own witnesses, that would permit, or even require, a verdict and judgment for the defendant on counterclaim. Especially is the issue of negligence vulnerable to such possibility.

We conclude, therefore, that the trial court erred in entering judgment on the partial verdict, and that the cause must be reversed to the end that all the issues between the parties may be disposed of in the same trial.

Reversed.