(631 P.2d 1237)

No. 51,829

CAROLYN ARTZ LANDON, *Plaintiff-Appellee,* v. HAROLD ARTZ, *Defendant-Appellant.*

Opinion filed July 24, 1981.

*William H. Stowell,* of Phillipsburg, for defendant-appellant.

*R. Douglas Sebelius,* of Sebelius Law Office, of Norton, for plaintiff-appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

FOTH, C.J.: The question presented in this case is whether a counterclaim may be asserted in a proceeding instituted under the Uniform Enforcement of Foreign Judgments Act, K.S.A. 60-3001 *et seq.* The trial court held it could not and we affirm.

The judgment creditor is Carolyn Artz Landon, a resident of Colorado. The debtor is her former husband, Harold Artz, a resident of Phillips County, Kansas. The judgment is a divorce decree rendered in Arizona on September 21, 1973. In that decree a divorce was granted to Harold Artz on his counterclaim; Carolyn was awarded custody of "the parties' minor child," then two years old, subject to Harold's visitation rights; Harold was ordered to pay $75 per month child support.

On June 26, 1979, this proceeding was commenced by the filing of a *certified* copy of the Arizona decree with the Clerk of the District Court of Phillips County, along with an affidavit of mailing of notice to the debtor. On October 22, 1979, a "Motion for Revivor of Judgment" was filed, along with an *authenticated* copy of the decree. A summons was issued and served on Harold the same day. Although it is not in the record before us, it was apparently in the customary form requiring the defendant to answer and also to state any counterclaim related to plaintiff's claim.

In due course Harold filed a responsive pleading. In his answer he defended on the grounds that the Arizona judgment was dormant when filed here and could not be revived here, and also that it had been procured by fraud. He also included a counterclaim for fraud, praying for return of the $3,725 in child

support previously paid plus general and punitive damages. The fraud alleged was Carolyn's representation that the child was his, when subsequent blood tests taken in connection with a proceeding under the Uniform Reciprocal Enforcement of Support Act demonstrated that he could not have been the father.

Carolyn moved to dismiss the counterclaim. That motion was heard together with the motion to revive the judgment. The trial court ruled first that the Arizona judgment was dormant and could only be revived in Arizona. It therefore said it "refuses at this time to recognize" the Arizona judgment. No appeal was taken from this order.

The court went on to strike Harold's counterclaim for two reasons: First, it was "not a permissible pleading to a notice of Foreign Judgment" because "[t]his is not a proceeding commenced under Article 2 of Chapter 60 [of the] Kansas Statutes Annotated." Second, "venue is not properly in Phillips County as any acts complained of by Harold Artz occurred outside of Kansas and in either Colorado or Arizona." Harold appeals from the dismissal of his counterclaim.

Defendant offers no authority from this or any other jurisdiction in support of his right to maintain a counterclaim. The act has received little treatment by the Kansas courts, although we have said it provides an alternative remedy to a suit on the foreign judgment, and is subject to the same statute of limitations as such a suit. *Alexander Construction Co. v. Weaver,* 3 Kan. App. 2d 298, 300-01, 594 P.2d 248 (1979). The act itself contains nothing to suggest that it contemplates a counterclaim.

"A copy of any foreign judgment authenticated in accordance with the act of congress or the statutes of this state may be filed in the office of the clerk of any district court of this state. Such copy must be filed by an attorney licensed to practice law in the state of Kansas. The clerk of the district court shall treat the foreign judgment in the same manner as a judgment of the district court of this state. *A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and may be enforced or satisfied in like manner."* K.S.A. 60-3002. Emphasis added.

The thrust of the emphasized language is to treat a foreign judgment once properly filed exactly like a Kansas judgment. To our knowledge it has never been thought that a counterclaim could be asserted in response to proceedings to enforce a Kansas judgment through execution, garnishment, or the like. Defenses may be asserted, and relief may be sought in an appropriate case

by motion under K.S.A. 60-260(*b*). After final judgment, however, it is too late to assert a claim for affirmative relief arising out of the transaction underlying the judgment.

The few cases we find under the uniform act all reach the same conclusion. In *Purser v. Corpus Christi State Nat'l Bk.,* 256 Ark. 452, 508 S.W. 2d549 (1974) the plaintiff obtained a judgment in Texas and registered the judgment in Arkansas. The defendant answered and filed a counterclaim and setoff for compensatory damages for conversion of business assets along with other actual and punitive damages. The court first noted its statute (the 1948 version of the uniform act) which allowed any "defense, setoff or counterclaim" to be asserted but reasoned the provision did no more than allow the obligor to raise any defense or counterclaim which he could have raised in opposition to an ordinary action to enforce a foreign judgment in the forum. Noting the general rule that registration may not be impeached by collateral attack except for lack of jurisdiction or fraud in the procurement, the court held this counterclaim could not be maintained. In response to the defendant's contention Arkansas's mandatory counterclaim statute required an opposite result, the court stated:

"In this case appellant is asserting the counterclaim and setoff, not as a defense to the original cause of action, but in a proceeding brought to enforce a judgment rendered in the original suit. We find this distinction to be significant. The purpose of the compulsory counterclaim statute was to settle all issues between the parties in one and the same lawsuit, thereby avoiding multiplicity of actions. *Martin v. Romes,* 249 Ark. 927, 462 S.W.2d 460. However, the statute applies only to a cause of action which the defendant could maintain as an independent suit. *Coats v. Milner,* 134 Ark. 311, 203 S.W. 701.

"The cause of action on which this counterclaim and set off was founded arose from allegedly tortious conduct of the appellee in Texas. The facts do not indicate any connection whatsoever with Arkansas until the time of the attempted registration of the judgment. The acts in Texas were not of such a nature that the defendant could maintain a separate cause of action in the Arkansas courts. To apply the compulsory counterclaim statute to these facts would be subversive of the salutary intent of the Uniform Act to provide for a prompt summary procedure to register such judgments without furthering the purposes of the counterclaim statute to prevent piecemeal, multiplicitous litigation in Arkansas courts. It might well pose constitutional questions under the full faith and credit clause of the United States Constitution. Furthermore, the compulsory counterclaim statute was passed in 1935, so the Ark. Stat. § 29-808 would supersede it, insofar as foreign judgment registration procedures are concerned, if there is any conflict." 256 Ark. at 460-1.

*Thompson v. Safeway Enterprises, Inc.,* 67 Ill. App. 3d 914, 24

Ill. Dec. 561, 385 N.E.2d 702 (1979), involved a contract action ending in judgment for the plaintiff who then attempted to register the decree in Illinois. The defendant counterclaimed alleging tortious interference with contract and breach of contract by the plaintiff. The defendant argued he could assert the counterclaim under the same 1948 section of the act relied on in *Purser.* The court dismissed the counterclaim, expressly rejecting the idea that normal rules of civil procedure pertaining to counterclaims applied to a "counterclaim" under the uniform act, partly because the regular Civil Practice Act specifically did not apply to "proceedings in which the procedure is regulated by separate statutes." 67 Ill. App. 3d at 917. The court went on to adopt the holding in *Purser* that the obligor may not collaterally attack absent fraud.

In *Concannon v. Hampton,* 584 P.2d 218 (Okla. 1978), the plaintiff procured a judgment in Missouri and filed it under the uniform act in Oklahoma. The defendant raised a number of defenses and counterclaimed for fraud in the original proceeding. In rejecting the obligor's arguments the court recited the history of the uniform act and the reasoning of the commissioners who drafted it. The court said:

"Defendant's final contention pertains to the trial court's refusal to allow him to prosecute his counterclaim. Defendant claims he instructed his attorney to file a counterclaim for fraud in the Missouri action. This the attorney failed to do. The above cited § 721 of the act provides that a foreign judgment is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a district court of Oklahoma. Defendant argues this is authority for his presenting his counterclaim for fraud in the Oklahoma action for enforcement of the Missouri judgment, even though he could have pursued it in Missouri but did not do so.

"There are two versions of the uniform act, the 1948 and the 1964. Oklahoma adopted the 1964 act. The 1948 act provided an alternative to adopting states in the provision reference defenses. Section 8 of the uniform 1948 act reads in pertinent part: 'Any defense [set-off] [counterclaim] [or cross-complaint] which under the law of this state may be asserted by the defendant in an action on the foreign judgment may be presented by appropriate pleadings and the issues raised thereby shall be tried and determined as in other civil actions.' One jurisdiction adopting this act but not adopting any of the bracketed terms addressed the problem of counterclaims in *Gem Manufacturing Corporation v. Lents Industries, Inc.,* 276 Or. 87, 554 P.2d 166 (1976). That court held Oregon Legislature's omission of the optional terms was sufficient evidence of its intent to preclude the assertion of counterclaims in such a proceeding. Defendant submits this decision is not persuasive in that Oklahoma did not adopt the 1948 uniform act. We do not agree. We did not adopt the 1948 act, thus we did not adopt the bracketed material

potentially allowing counterclaims to be asserted in the proceeding. Draftsmen of the uniform 1964 act as well as the 1948 act were primarily concerned with preserving a defendant's right to assert defenses as to the *validity* of the foreign judgment, to insure that the judgment was entitled to full faith and credit. The 1948 act was designed to shorten the time consuming procedure of enforcement of foreign judgments by providing a summary procedure. Because the method under this act still was not as simplified as in federal courts, the 1964 act was born, simplifying further the enforcement of foreign judgments. It is evident this section does not contemplate allowing a defendant, in an action against him to enforce a foreign judgment, to pursue a counterclaim neither pleaded nor considered in the other state's forum. Trial court correctly denied defendant's counterclaim.

"Absent any question of jurisdiction over the defendant or the subject matter, full faith and credit must be accorded the judgment of a sister state and forum court may not rehear the case upon its merits, as it is res judicata concerning plaintiff's claim and *all defenses raised or which could have been presented.*" 584 P.2d at 221-22. Emphasis in the original.

Kansas adopted the 1964 version of the uniform act in which the commissioners had eliminated all reference to counterclaims, optional or otherwise. We therefore hold that a counterclaim may not be asserted in a proceeding to enforce a foreign judgment registered under the Uniform Enforcement of Foreign Judgments Act, K.S.A. 60-3001 *et seq.*

Affirmed.