No. 100,763

ORLANDO PADRON and HLMP AVIATION CORP., *Appellants*, v.
HERNAN LOPEZ; PTC AVIATION CORPORATION; 1ST SOURCE
BANK; and JOHN DOE, *Defendants*, and DODSON INTER-
NATIONAL PARTS, INC.; and DODSON AVIATION, INC., *Appellees*.

(220 P.3d 345)

1090

Opinion filed November 25, 2009.

*W. Joseph Hatley*, of Spencer Fane Britt & Browne LLP, of Kansas City, Missouri, argued the cause, and *Gardiner B. Davis*, of the same firm, and *Blaine Finch*, of Green & Finch Chartered, of Ottawa, were with him on the briefs for appellants Orlando Padron and HLMP Aviation Corp.

*Laura L. McConwell*, of McConwell Law Offices, of Mission, argued the cause, and *Edward A. McConwell*, of the same firm, was with her on the brief for appellees Dodson International Parts, Inc., and Dodson Aviation, Inc.

The opinion of the court was delivered by

LUCKERT, J.: This appeal arises from a district court's decision to quash the registration and attempted enforcement of a Florida temporary injunction, filed under the Uniform Enforcement of Foreign Judgments Act (Foreign Judgments Act), K.S.A. 60-3001 *et seq*. We affirm this decision, holding that an ex parte temporary injunction is not entitled to full faith and credit because it is a prejudgment, temporary order. Therefore, it is not subject to enforcement under either the Foreign Judgments Act or the Full Faith and Credit Clause of the United States Constitution, Article 4, § 1. We further hold that the district court erred in examining the merits of the underlying action, considering a counterclaim, and entering an injunction and other orders because the Foreign Judgments Act grants only limited subject matter jurisdiction for the purpose of enforcing a foreign judgment. Finally, we conclude the district court did not abuse its discretion in refusing to recognize the foreign judgment as a matter of comity because the Florida order is contrary to the public policy of this state.

## FACTUAL AND PROCEDURAL BACKGROUND

The foreign judgment at issue in this case was entered in an action filed on March 18, 2008, in the Circuit Court of Miami-Dade County, Florida. The Florida action was filed by Orlando Padron, a resident of Florida, and HLMP Aviation Corporation, a Delaware corporation jointly owned by Padron and Hernan Lopez. (For ease of reference the plaintiffs will be collectively referred to as Padron.) The named defendants in the Florida action were Lopez, a resident of Florida; PTC Aviation Corporation, a Florida

corporation; Dodson International Parts, Inc., and Dodson Aviation, Inc., a/k/a Dodson International (collectively referred to as Dodson), both Kansas corporations; and 1st Source Bank, a "USA Indiana licensed banking institution." Padron alleged that Lopez, PTC, and Dodson conspired to defraud Padron into organizing and investing capital in HLMP Aviation and then used the capital to purchase the Beech 200 Model Aircraft that is the focus of this case. At the time the Florida action was filed, Dodson, which is in the business of repairing aircraft, had possession of the aircraft in Kansas and had performed repairs on the aircraft.

In the Florida action, Padron obtained an ex parte temporary order that enjoined the defendants "from selling, transferring, transporting, encumbering, auctioning, and operating" the aircraft. Further, the Florida temporary injunction ordered those in possession of the aircraft to transfer possession of the aircraft to Padron or Padron's agents "upon presentation of this Order" and authorized the relocation of the aircraft to Dade County, Florida. The Florida court indicated that the ex parte temporary injunction was being "granted without notice to the Defendants to prevent the Aircraft from being sold or transferred to third parties." Although the order became effective upon the filing of a bond, the Florida order further provided: "The Defendants and all interested parties may petition this Court for relief from this Temporary Injunction as provided for under the Florida Rules of Civil Procedure and applicable Florida Law." Under Rule 1.610 of the Florida Rules of Civil Procedure, 31 Fla. Stat. R.C.P. Rule 1.610 (2004), a party against whom an ex parte temporary injunction has been entered may move to dissolve or modify a temporary injunction. A hearing must be scheduled within 5 days of that motion.

The day after the ex parte temporary injunction was entered in the Florida action, Padron filed a "Notice of Filing of Foreign Judgment" pursuant to the Foreign Judgments Act, K.S.A. 60-3001 *et seq.*, in Franklin County, Kansas, where Dodson possessed the aircraft while performing repairs. Attached to the notice were copies of the Florida ex parte temporary injunction and a notice that Padron had posted a $450,000 injunction bond in Florida. Within hours of the filing, Padron's agents, with the assistance of the

Franklin County Sheriff, removed the aircraft from Dodson's possession.

Later that same day, Dodson filed a "Motion to Quash Foreign Judgment." A few days later, Dodson filed an amended motion in which it expanded on its arguments. In both motions, Dodson alleged the Florida court did not have personal jurisdiction over Dodson and was without authority to enter the injunction. Dodson also asserted a mechanic's lien pursuant to K.S.A. 58-201 and alleged that Padron's removal of the aircraft jeopardized Dodson's possessory mechanic's lien and its ability to collect the amounts it was owed for parts and services related to the repair of the aircraft. Finally, Dodson asserted the judgment should be quashed because a bond had not been posted in Franklin County District Court as required by K.S.A. 60-901, the Kansas injunction statute. In the amended motion, Dodson requested that

"the court immediately quash the temporary injunction for lack of jurisdiction and failure to post the required bond and order [Padron] to return the aircraft to the possession of [Dodson] in the State of Kansas. If the court declines to quash the temporary injunction, [Dodson] request[s] that the court issue a stay of the injunction, return the aircraft to the possession of [Dodson], and order the aircraft to remain in [Dodson's] possession until such time as the matter can be more fully heard. If possession [of the aircraft] is not returned to [Dodson, it] requests that the court require a bond in an appropriate amount to be filed . . . ."

Attached to the amended motion were affidavits of the president of Dodson Aviation and the chief financial officer of Dodson International Parts, Inc. The affidavits supported Dodson's argument that its Kansas corporations were not subject to the Florida court's jurisdiction; each affiant stated that the corporations were not registered to do business in Florida and had not done business in Florida. Attached to the Dodson Aviation president's affidavit was a copy of Dodson's mechanic's lien that had been filed with the Franklin County Register of Deeds.

While Dodson objected to the Kansas action and filed pleadings in the Kansas case to quash the temporary injunction, no steps were taken in Florida to modify the ex parte temporary injunction. However, another defendant in the Florida action—1st Source Bank—filed a motion seeking an increased injunction bond. The Florida

court granted this motion and required an additional $800,000 to be posted. Padron complied on April 30, 2008, and filed a notice in the Franklin County action reporting the filing of the additional bond.

Meanwhile, several hearings were conducted in the Kansas proceeding. On April 1, 2008, the Franklin County District Court granted Dodson's motion to quash and found that the Franklin County Sheriff had not been given the authority in Kansas to seize the aircraft. Even though the district court granted Dodson's prayer to quash the foreign judgment, it also granted Dodson's alternative prayers by entering orders requiring the return of the aircraft to Kansas or the posting of an injunction bond in the Franklin County District Court that was specifically designated for the satisfaction of Dodson's lien. The journal entry reflecting these orders was entered on April 4, 2008.

By April 8, 2008, Padron had not returned the aircraft or posted a bond in Kansas, leading Dodson to file a motion seeking an order to show cause why Padron should not be held in contempt of court. On April 15, 2008, Padron filed a motion for rehearing. In Padron's memorandum of support, Padron argued, *inter alia*, that the district court erred in quashing the Florida injunction because the court failed to find any procedural defect in the filing of the foreign judgment in Kansas and, to the extent the district court's ruling was based on an implicit finding of no personal jurisdiction over Dodson in Florida, the district court erred. Padron asserted that the Florida court merely ordered the return of the aircraft pending final adjudication of the underlying matter, which would not impair Dodson's ability to challenge jurisdiction in Florida or to raise other defenses in the Florida lawsuit.

In addition, Padron raised a challenge based on jurisdiction, arguing Padron had consented to jurisdiction in Kansas only for the limited purpose of making the foreign judgment valid and "ripe" for enforcement in Kansas. Padron contended that once the district court set aside the Florida injunction and declined to give it full faith and credit, there was no basis to subject Padron to the general jurisdiction of the Kansas court for purposes of issuing additional orders.

At the hearing on the contempt motion, the district court first denied Padron's motion for rehearing. The court reiterated that the Florida injunction failed to comply with either K.S.A. 60-903 or K.S.A. 60-905 and that those statutes required Padron to post a bond in Kansas. The court reasoned that a bond must be posted in Kansas because K.S.A. 60-3002 requires that "any foreign judgment would be subject to the *same procedures, defenses and proceedings* as any other judgment in Kansas." (Emphasis added.) The court noted that in Kansas, a bond is required in every case before a temporary injunction will operate, unless another statute expressly dispenses with the requirement. See K.S.A. 60-905; *Ostler v. Nickel*, 196 Kan. 477, 479-80, 413 P.2d 303 (1966) (issuing a temporary injunction without a bond is erroneous).

Regarding the allegation of contempt, the district court concluded it had jurisdiction to hold Padron in contempt and further determined that Padron was in contempt of court due to Padron's failure to return the aircraft to Kansas. Padron was given until May 5, 2008, to either return the aircraft or to post a bond in the amount of $502,000 with the clerk of the Franklin County District Court.

On May 6, 2008, Dodson filed a verified motion to foreclose its mechanic's lien and a counterclaim for damages. On the same day, the district court held a hearing and granted Padron's request for a 1-week continuance for compliance with the court's previous orders to return the aircraft or post a bond. At that time, the district court denied Dodson's request to impose a daily fine on Padron for failing to comply with the court's orders.

The parties once again appeared before the district court through counsel on May 13, 2008. Dodson renewed its request for the imposition of a daily fine to nudge Padron into compliance with the court's orders, and Padron's counsel raised a general objection to the issuance of a contempt fine. After finding that Padron had not returned the aircraft to Kansas and had not posted a bond in Kansas, the district court ordered Padron to pay a fine of $2,500 per day beginning May 13, 2008, and continuing until Padron complied with the court's orders. The court's journal entry was filed on May 21, 2008.

Padron subsequently filed a motion for relief, arguing that the journal entry of contempt was void for lack of service of process because Dodson's motions regarding contempt were never personally served on Padron. The district court denied Padron's motion, observing that despite Padron's status as an out-of-state litigant, Padron had continued to litigate the validity of the district court's order quashing the Florida injunction, essentially submitting to the jurisdiction of the Kansas court.

Padron now appeals. The district court stayed the foreclosure of Dodson's mechanic's lien pending this appeal.

## FULL FAITH AND CREDIT AND COMITY

The parties have based their arguments on the Full Faith and Credit Clause of the United States Constitution, Article 4, § 1; the Foreign Judgments Act, K.S.A. 60-3001 *et seq.*; and the common-law doctrine of comity. While the parties have often failed to distinguish between these provisions and doctrines, for purposes of our analysis it is important to separate the concept of comity from full faith and credit, which comes into play in an analysis under either the Full Faith and Credit Clause or the Foreign Judgments Act.

### A. *Full Faith and Credit*

As a general rule, when a properly authenticated judgment of a state other than Kansas is offered as evidence in a Kansas court, the Full Faith and Credit Clause of the United States Constitution, Article 4, § 1, gives the foreign judgment the same force and effect in Kansas as it has in the state where the judgment was rendered. *Hamilton v. Netherton*, 194 Kan. 683, 685, 401 P.2d 657 (1965); *Fischer v. Kipp*, 177 Kan. 196, 197-98, 277 P.2d 598 (1954). In other words, once a copy of an authenticated judgment from another state is filed with a clerk of the district court, the foreign judgment "is then treated as a judgment of [this] state and can be executed upon the same." 1 Elrod and Buchele, Kansas Law & Practice: Kansas Family Law § 9.71, p. 617 (4th ed. 1999).

In Kansas, a party has the option to file either a common-law action to enforce a foreign judgment or may file a judgment pur-

suant to the Foreign Judgments Act, K.S.A. 60-3001 *et seq*. See K.S.A. 60-3006 (declaring that the right of a judgment creditor to bring an action to enforce a judgment instead of proceeding under the Foreign Judgments Act remains unimpaired); *Johnson Brothers Wholesale Liquor Co. v. Clemmons*, 233 Kan. 405, 407, 661 P.2d 1242 (1983); see *Warner v. Warner*, 9 Kan. App. 2d 6, 8, 668 P.2d 193 (1983); see also 5 Gard and Casad, Kansas Law & Practice, Kan. C. Civ. Proc. Annot. § 60-3001, p. 476 (4th ed. 2003) (Foreign Judgments Act "provides a convenient optional alternative to bringing an action based on the foreign judgment and pleading the fact of such judgment as provided in K.S.A. 60-209[e] as a 'special matter,' with the result that by such judicial process the judgment is reduced to the status of a local Kansas judgment, enforceable as such.").

Padron's single sentence "Notice of Foreign Judgment," which served as the basis for this action, indicated it was filed under the Foreign Judgments Act.

## 1. Standard of Review

Analyzing the full faith and credit aspects of the issue requires examining the Constitution, applicable statutes, and various jurisdictional considerations. Questions involving jurisdiction and constitutional or statutory interpretation are legal questions over which appellate courts have unlimited review. *Harsch v. Miller*, 288 Kan. 280, 286, 200 P.3d 467 (2009); *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008); *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 371, 130 P.3d 560 (2006).

As we consider the provisions of the Foreign Judgments Act, the most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). An appellate court's first task is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). When a statute is plain and unambiguous, this court will not speculate as to legislative intent and

will not read the statute to add something not readily found in it. *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 172 L. Ed. 2d 239 (2008).

### 2. *Foreign Judgments Act*

K.S.A. 60-3002 of the Foreign Judgments Act specifically provides for the filing and treatment of foreign judgments:

"A copy of any foreign judgment authenticated in accordance with the act of congress, the statutes of this state or certified in accordance with the statutes of the state in which the judgment was rendered, may be filed in the office of the clerk of any district court of this state. Such copy must be filed by an attorney licensed to practice law in the state of Kansas. The clerk of the district court shall treat the foreign judgment in the same manner as a judgment of the district court of this state. *A judgment filed as provided by this section has the same effect and is subject to the same procedures, defenses and proceedings* as a judgment of a district court of this state and may be enforced or satisfied in like manner." (Emphasis added.)

Addressing the procedural aspects of this provision, the district court concluded: "[I]t appears [the Florida judgment is] valid . . . and was filed properly . . . in Franklin County." Nevertheless, the district court quashed the Florida injunction because it did "not appear to protect the interest" of Dodson. Padron argues that this conclusion is based on the district court's disagreement with the Florida ruling and, therefore, is contrary to the Foreign Judgments Act which does not allow an examination of the merits of a foreign judgment. Rather, Padron argues, the Foreign Judgments Act requires the district court to give full faith and credit to a foreign judgment unless the court finds (1) fraud in the procurement of the judgment or (2) that the issuing court lacked jurisdiction. Because the district court did not find the existence of either of these grounds, Padron argues the district court had no choice but to enforce the Florida judgment.

As Padron argues, it is well settled under the Full Faith and Credit Clause that "[a] judgment of a sister state, where there is no want of jurisdiction, cannot be impeached for irregularities in the proceedings or erroneous rulings, but must be regarded as binding, until set aside by the court rendering it, or by a reviewing court on appeal." *Littlefield v. Paynter*, 111 Kan. 201, 205, 206

Pac. 1114 (1922); see *State v. Duke*, 205 Kan. 37, 40, 468 P.2d 132 (1970). Kansas courts, as have other courts, have applied the same rule to actions brought pursuant to the Foreign Judgments Act. *National Equip. Rental, Ltd. v. Taylor*, 225 Kan. 58, 60, 587 P.2d 870 (1978) (applying K.S.A. 60-3001 and citing prior Kansas cases applying Full Faith and Credit Clause); *Landon v. Artz*, 6 Kan. App. 2d 617, 619, 631 P.2d 1237 (1981) (discussing cases from sister jurisdictions under the Foreign Judgments Act and stating general rule). As a result, foreign judgments and journal entry recitals are presumed valid and may not be impeached by collateral attack except for lack of jurisdiction or fraud in the procurement. *Duke*, 205 Kan. at 40-41. Further, the party seeking to prevent enforcement of the foreign judgment has the burden of establishing either the lack of jurisdiction or fraud underlying the foreign judgment. *Brockman Equipment Leasing, Inc. v. Zollar*, 3 Kan. App. 2d 477, 482, 596 P.2d 827 (1979) (" 'The burden of undermining the verity which [foreign] decrees import rests heavily upon the assailant.' *Williams v. North Carolina*, 325 U.S. 226, 233-34, 89 L. Ed. 1577, 65 S. Ct. 1092 [1945]").

Dodson does not dispute these principles but makes a three-pronged argument as to why those rules do not undercut the Franklin County District Court's decision. First, for the first time on appeal, Dodson argues that these rules do not come into play if the foreign judgment is a temporary judgment. Second, Dodson argues that the Florida court lacked jurisdiction over Dodson. Finally, Dodson argues the district court's actions were allowed because of K.S.A. 60-3002, which provides in part: "A judgment filed as provided by this section has the same effect and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and may be enforced or satisfied in like manner."

### a. Temporary Prejudgment Orders and Full Faith and Credit

Regarding Dodson's first argument, Padron does not dispute that the Florida injunction was not a final order and concedes it was not a determination of the merits of the underlying lawsuit. Instead Padron argues the lack of finality is not determinative be-

cause the language of K.S.A. 60-3001(a) recognizes "any judgment, decree or order" of a sister state and suggests this language is sufficiently broad to encompass the Florida temporary injunction.

This argument ignores the limiting language of K.S.A. 60-3001(a) that recognizes "any judgment, decree or order" of a sister state *"which is entitled to full faith and credit in this state."* (Emphasis added.) In other words, only if a foreign judgment or order is entitled to full faith and credit can the judgment or order be enforced. Dodson argues that temporary prejudgment orders are not orders entitled to full faith and credit under either the United States Constitution or the Foreign Judgments Act.

This argument is not supported by any specific statement to this effect in the Foreign Judgments Act. Nevertheless, the concept of the finality of judgment is incorporated in K.S.A. 60-3004(a), which permits the filing of foreign judgments that have been appealed or are subject to appeal, but it requires that enforcement of such judgments be stayed until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated. The provision states:

"If the judgment debtor shows the district court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered." K.S.A. 60-3004(a).

Applying this provision, this court has indicated that K.S.A. 60-3004(a) does not require that the foreign judgment be a "final judgment" in the sense that time for an appeal has expired or appellate remedies have been exhausted; instead, when the district court is notified of an appeal of the foreign judgment, the enforcement of the foreign judgment is stayed until the appeal becomes final. Otherwise, "attempts to enforce a foreign judgment which is subject to modification would be a waste of everyone's time." *In re Estate of Rains*, 249 Kan. 178, 185, 815 P.2d 61 (1991).

This holding does not clearly apply to this case, however, because *Estate of Rains* dealt with a judgment on appeal, not a temporary

injunction. Further, K.S.A. 60-3004(a) does not directly apply because the temporary injunction was not an appealable order. In fact, there does not appear to be any controlling authority on point; the parties do not cite and we have not found a Kansas case determining whether a prejudgment order, such as a temporary restraining order or injunction, is entitled to full faith and credit. See *Hicks v. Hefner*, 210 Kan. 79, 82-86, 499 P.2d 1147 (1972) (approvingly citing cases from other states holding that orders subject to modification are not entitled to full faith and credit but deciding issue on other grounds).

Nevertheless, the question has been considered in other jurisdictions—under both the Full Faith and Credit Clause and the Foreign Judgments Act—with the generally accepted result being that full faith and credit is not required when a decree is interlocutory or subject to modification under the law of the rendering state, except for an exception in some jurisdictions for child custody orders. *E.g., Harris v. Harris*, 14 Conn. App. 384, 388, 540 A.2d 1079 (1988) ("The plaintiff, by obtaining both final orders, made the judgment impervious to modification and therefore took the necessary step in entitling her case to full faith and credit under Connecticut law."); *Cook v. Soo Line Railroad Co.*, 347 Mont. 372, 378, 198 P.3d 310 (2008) (limiting the Full Faith and Credit Clause to "final judgment"); *Clark v. Clark*, 714 A.2d 427, 430 (Pa. Super. 1998) (because child and spousal support orders are modifiable, they are considered nonfinal orders not subject to full faith and credit in Pennsylvania); *Bard v. Charles R. Myers Ins. Agency*, 839 S.W.2d 791, 794 (Tex. 1992) (full faith and credit not required when decree is interlocutory or subject to modification under the law of the rendering state); *Mindis Metals v. Oilfield Motor & Control*, 132 S.W.3d 477, 484 (Tex. App. 2004) (only when judgment is conclusive locally does Full Faith and Credit Clause preclude any inquiry into merits; party seeking to enforce foreign judgment has initial burden to present judgment that appears on its face to be final, valid, and subsisting judgment); see also Restatement (Second) of Conflict of Laws § 107 (1971) ("A judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition.").

Presumably, a distinction is made between final and nonfinal orders because a judgment that is conclusive in the state where it was pronounced is equally conclusive elsewhere, and a judgment that is not conclusive in the state of its rendition is equally inconclusive in another state. *Overmyer v. Eliot Realty*, 83 Misc. 2d 694, 704-05, 371 N.Y.S.2d 246 (1975) (stating that a foreign judgment is entitled to same weight in state in which enforcement is sought as the rendering state would accord it there; if judgment could be impeached in the rendering state, it can be collaterally attacked in a state where enforcement is sought). For example, in this case it is possible the Florida court would determine it did not have jurisdiction over Dodson or would otherwise determine that Padron was not entitled to relief on the merits. As a result, the Florida court could modify the injunction.

Because of such a possibility, our sister jurisdictions have generally refused to allow a prejudgment remedy based on a nonfinal judgment. *E.g.*, *Cahaly v. Benistar Property Exchange Trust Co.*, 268 Conn. 264, 275, 842 A.2d 1113 (2004) ("Since a plaintiff cannot bring an action to enforce a foreign judgment until that foreign judgment is obtained, a plaintiff likewise cannot base an application for a prejudgment remedy on an action to enforce a foreign judgment until that foreign judgment is obtained."); *American Refractories v. Combustion Controls*, 70 S.W.3d 660, 663 (Mo. App. 2002) ("[J]urisdiction over an attachment proceeding is derived from the main action, so the main action must necessarily be in the court where the attachment is sought, otherwise there is no action in that court from which to acquire jurisdiction. Thus, there is no jurisdiction to enter a writ of attachment in Missouri based on a Pennsylvania legal action.").

The rationale of these decisions is persuasive and consistent with this court's holding in *In re Estate of Rains*, 249 Kan. 178. An additional consideration is that K.S.A. 60-3007 obligates us to interpret and construe the Foreign Judgments Act in uniformity with other states that have adopted the uniform act. As a result, although there may be exceptions we are not called on to consider in this case, we conclude that in general an ex parte temporary injunction

is not entitled to full faith and credit and is not subject to enforcement under the Foreign Judgments Act, K.S.A. 60-3001 *et seq.*

Nevertheless, Padron argues we cannot affirm the district court on this basis because Dodson did not raise the issue before the district court and the district court did not rely on the temporary nature of the Florida order in making its ruling. In response, Dodson suggests that although the district court did not articulate the finality issue, it correctly refused to limit its considerations to extrinsic fraud and Florida's jurisdiction to issue the injunction. We agree with Dodson, although on slightly different grounds.

As discussed, a Kansas court enforcing the Full Faith and Credit Clause or the Foreign Judgments Act only has jurisdiction to enforce a foreign judgment that is entitled to full faith and credit. In other words, the district court's subject matter jurisdiction is limited to such orders, and subject matter jurisdiction is a question that may be raised at any time, including for the first time on appeal or even on an appellate court's own motion. *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 166, 210 P.3d 105 (2009); see also *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967) (recognizing three situations where an issue, including a constitutional issue, can be presented for first time on direct appeal: [1] newly asserted theory involves only question of law arising on proved or admitted facts and issue is finally determinative of the case; [2] resolution of question is necessary to serve ends of justice or to prevent denial of fundamental rights; or [3] district court reached right conclusion but relied on wrong ground or assigned wrong reason for its decision).

As a result, we are not precluded from considering whether the district court lacked subject matter jurisdiction because of either Dodson's failure to argue the issue before the district court or the district court's lack of reliance on that basis for its decision.

We, therefore, affirm the district court's refusal to enforce the Florida ex parte temporary injunction under the Foreign Judgments Act, K.S.A. 60-3001 *et seq.* Because we reach this conclusion, we need not consider the parties' arguments regarding whether the Florida court had jurisdiction over Dodson. However, we must consider Dodson's arguments that the Kansas district

court was entitled to order the return of the aircraft to Kansas, to order an additional bond, and to consider Dodson's counterclaim because of the provisions of K.S.A. 60-3002.

### b. Procedures, Defenses, and Proceedings

Dodson argues these additional orders of the Kansas district court were permitted under the Foreign Judgments Act because K.S.A. 60-3002 states: "A judgment filed as provided by this section has the same effect and is subject to the same procedures, defenses and proceedings as a judgment of a district court of this state and may be enforced or satisfied in like manner."

Padron argues this provision does not give a Kansas district court jurisdiction to impose those orders. To support its argument, Padron cites *Landon*, 6 Kan. App. 2d 617.

In *Landon*, the Court of Appeals held that a counterclaim may not be asserted in a proceeding instituted under the Foreign Judgments Act. In reaching the holding, the Court of Appeals cited cases from other jurisdictions where the court rejected the argument that Dodson is now advancing. The court noted:

" 'Absent any question of jurisdiction over the defendant or the subject matter, full faith and credit must be accorded the judgment of a sister state and forum court may not rehear the case upon its merits, as it is res judicata concerning plaintiff's claim and all defenses raised or which could have been presented.' [*Concannon v. Hampton*, 584 P.2d 218, 222 (Okla. 1978).]" *Landon*, 6 Kan. App. 2d at 621.

Applying this rule to the question of whether a counterclaim could be brought in an action filed pursuant to the Foreign Judgments Act, the court stated:

"The thrust of [K.S.A. 60-3002] is to treat a foreign judgment once properly filed exactly like a Kansas judgment. To our knowledge it has never been thought that a counterclaim could be asserted in response to proceedings to enforce a Kansas judgment through execution, garnishment, or the like. Defenses may be asserted, and relief may be sought in an appropriate case by motion under K.S.A. 60-260(b). After final judgment, however, it is too late to assert a claim for affirmative relief arising out of the transaction underlying the judgment." *Landon*, 6 Kan. App. 2d at 618-19.

Dodson responds that this case is distinguishable from *Landon* in that the Florida injunction is not a final judgment. This is a valid

point and emphasizes the reasons full faith and credit is not given to a temporary injunction. Nevertheless, we reject Dodson's position that filing a notice of foreign judgment grants the Kansas district court subject matter jurisdiction over the merits of the underlying action. The Foreign Judgments Act allows for postjudgment proceedings only, and the Kansas district court's refusal to enforce the Florida judgment essentially resulted in a dismissal of the action, leaving the court without subject matter jurisdiction over any further proceedings.

Such a result, Dodson argues, would cause the Florida temporary injunction to erroneously gain "the super power of a final judgment." See *Hicks*, 210 Kan. 79, Syl. ¶ 2 ("No greater effect need be given by a court of the forum state to any judgment of a court of another state than is given to it in the state where the judgment was rendered."); *Tanner v. Hancock*, 5 Kan. App. 2d 558, 563, 619 P.2d 1177 (1980) (purpose of Foreign Judgments Act is to facilitate enforcement of a judgment in state where registered, not to enhance judgment of original state of rendition; it was not designed "to impose a 'super status' upon judgment of a sister state"). Again, this argument ignores the district court's refusal to give the Florida judgment *any* effect.

Further, the cases cited by Dodson—*i.e.*, *Hicks* and *Tanner*—do not alter the rule that the Foreign Judgments Act does not grant subject matter jurisdiction to consider the merits of the action that underlies the foreign judgment or order. Rather, the cases merely stand for the proposition that a judgment cannot be enforced in a manner contrary to the law of the original jurisdiction. *Hicks*, 210 Kan. at 87 (because Texas only allows enforcement of unpaid child support via contempt proceeding, Kansas could not require lump-sum payment); *Tanner*, 5 Kan. App. 2d at 563-64 (judgment entered against judgment debtor in Kansas, with motion for relief by judgment debtor still pending, did not become an independent Missouri judgment when registered in Missouri under Foreign Judgments Act and could not be registered in Kansas under Foreign Judgments Act as a new Kansas judgment). In other words, the cases are consistent with the considerable authority holding that the Foreign Judgments Act does not allow consideration of

the merits of the action that underlies the foreign judgment or order.

Nevertheless, Dodson argues a contrary result is justified because of cases holding that a person seeking relief from a court subjects him or herself to the general jurisdiction of the court. *E.g., In re Marriage of Thompson,* 17 Kan. App. 2d 47, 832 P.2d 349 (1992). This argument confuses personal jurisdiction, which was at issue in the cited cases, and subject matter jurisdiction. As we recently reiterated:

"Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. [Citation omitted.] Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction. [Citation omitted.]" *Kingsley v. Kansas Dept. of Revenue,* 288 Kan. 390, 395, 204 P.3d 562 (2009).

Applying these authorities, we conclude the district court erred in entering the various orders after refusing to recognize the foreign judgment. Further, these orders were contrary to the Foreign Judgments Act, which limits the court's jurisdiction to postjudgment procedures. Consequently, we conclude that once the court refused to allow the registration of the foreign judgment, it essentially dismissed the action and lost subject matter jurisdiction to take any further action.

There may remain a question of whether Padron could be held in contempt for failing to abide by the district court's orders, even though we have concluded the district court did not have jurisdiction to enter the orders. We need not resolve this question, however, because we agree with Padron's arguments that the district court's May 21, 2008, judgment establishing a contempt fine of $2,500 per day was void due to Dodson's failure to serve Padron personally with the district court's order to appear and show cause.

K.S.A. 20-1204a(b) requires an order to appear and show cause to be served on a party allegedly in indirect contempt of the court, and where the accused has not waived the service requirement the court is without jurisdiction to proceed. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 390, 673 P.2d 1126 (1983); see K.S.A. 20-1204a(b); *In re Seelke,* 235 Kan. 468,

471, 680 P.2d 288 (1984) (service of order to show cause on attorney for party not sufficient to confer jurisdiction; "[a] citation for contempt is an action against a specific person requiring all of the due process criteria"); *Bond v. Albin*, 29 Kan. App. 2d 262, 263, 28 P.3d 394 (2000), *rev. denied* 271 Kan. 1035 (2001) (failure to comply with the procedural requirements of K.S.A. 20-1204a is jurisdictional); *Geiger-Schorr v. Todd*, 21 Kan. App. 2d 1, 7, 901 P.2d 515 (1995) (citing *Pork Motel* and concluding that although substantial compliance with service requirements of Chapter 60 is sufficient to acquire jurisdiction in action, it is not acceptable under more stringent contempt statute); *cf. Harsch*, 288 Kan. at 295 (failure to comply with procedural requirements of direct contempt statute K.S.A. 20-1203 is jurisdictional); *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 926-27, 128 P.3d 364 (2006) (procedure governing indirect contempt is strictly construed against the moving party).

Further, we conclude that Padron's objections to jurisdiction at the hearing and in subsequent motions for rehearing were sufficient to preserve the issue of jurisdiction, and Padron's efforts to defend against the contempt accusation and Padron's attempt to enforce the Florida judgment did not result in a waiver of his jurisdiction defense. Padron's stated objection and continued renewal of the objection distinguishes this case from the case relied on by Dodson, see *In re Marriage of Brotherton*, 30 Kan. App. 2d 1298, 1300, 59 P.3d 1025 (2002), where the contemptuous party raised jurisdiction for the first time on appeal.

As a final argument related to the contempt order, Dodson argues that Padron's appeal is untimely. Dodson's argument is not persuasive given the fact that the district court did not enter its final journal entry summarizing the contempt matter and establishing the contempt fine until May 21, 2008. Hence, this appeal was timely filed when Padron filed its notice of appeal on June 17, 2008, less than 30 days later. See K.S.A. 60-2103(a).

*B. Principles of Comity*

Further, Padron argues that even if the ex parte temporary order was not enforceable under the Foreign Judgments Act, it should

have been enforced under principles of comity. When granting comity, courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect. *Head v. Platte County, Mo.*, 242 Kan. 442, Syl. ¶ 2, 749 P.2d 6 (1988); *Boyce v. Boyce*, 13 Kan. App. 2d 585, 590, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989). In other words, comity differs from the application of the Full Faith and Credit Clause in that a state court *must* give credit to a foreign judgment or order that is subject to full faith and credit without inquiry into the merits of the action, but a foreign judgment or order *may* be enforced as a matter of comity. *Rich v. Con-Stan Industries*, 449 S.W.2d 323, 327 (Tex. Civ. App. 1969).

It is appropriate to exercise comity when a court recognizes the rights upon which a decree of a sister state is based and decides that the enforcement of such rights does not violate any principle of public policy of the forum court's state. Where public policy is not violated, it is generally recognized that a court should exercise comity over a foreign judgment or order in order to avoid expense, harassment, and inconvenience to the litigants. *Perrenoud v. Perrenoud,* 206 Kan. 559, 573, 480 P.2d 749 (1971); *In re Marriage of Laine*, 34 Kan. App. 2d 519, 523, 120 P.3d 802 (2005), *rev. denied* 281 Kan. 1378 (2006); *Rich*, 449 S.W.2d at 327. The determination of whether to exercise comity is a matter of district court discretion that will only be reversed on a determination that discretion was abused. *In re Miller*, 228 Kan. 606, 610, 620 P.2d 800 (1980).

Some courts have recognized and enforced a foreign jurisdiction's temporary injunction under the doctrine of comity. *E.g., Intrinsic Values Corp. v. Superintendencia*, 806 So. 2d 616, 619 (Fla. Dist. App. 2002) (recognizing temporary injunction of Guatemalan court); *Cardenas v. Solis*, 570 So. 2d 996, 999 (Fla. Dist. App. 1990) (recognizing and enforcing temporary injunction of Guatemalan court freezing half the funds in defendant's Florida bank accounts); *Rich*, 449 S.W.2d at 327 ("[E]ven if this judgment cannot be given effect under the full faith and credit clause of the U.S. Constitution" because it is not technically a final judgment or "for any of

the reasons herein stated, we find that the California judgment can be given credit under the doctrine of comity.").

Hence, at least theoretically, Padron could have requested the Franklin County District Court to recognize the Florida temporary injunction under the doctrine of comity. Nevertheless, Padron did not do so. Rather, the action underlying this appeal was filed pursuant to the Foreign Judgments Act, which requires that a foreign judgment or order be entitled to full faith and credit; it was not filed as a common-law action to enforce a judgment or order. See K.S.A. 60-3006 (preserving ability to bring common-law action as alternative to an action under Foreign Judgments Act).

Moreover, even if we were to construe some of Padron's later motions and arguments liberally as a request to enforce the judgment based on comity, Padron does not convince us that the district court abused its discretion in refusing to recognize the Florida judgment. In making its findings, the district court, in essence, concluded the Florida judgment was against Kansas public policy because the temporary injunction altered, rather than preserved, the status quo by requiring the transfer of possession of the aircraft. See *Idbeis v. Wichita Surgical Specialists*, 285 Kan. 485, 492, 173 P.3d 642 (2007) (purpose of temporary or preliminary injunction is not to determine any controverted right but to prevent injury to a claimed right pending final determination of controversy on its merits; temporary injunction merely preserves status quo until final determination of controversy can be made).

We note, however, that the portion of the Florida court injunction prohibiting "selling, transferring, transporting, encumbering, auctioning, and operating" was consistent with the purpose of preserving the status quo, and enforcement of that portion of the order would have been consistent with both public policy and comity. Yet, by the time the matter came to the attention of the district court, Padron had altered the status quo and removed the aircraft from Kansas. Under those circumstances, Padron cannot complain that the district court abused its discretion by not taking action that had been largely rendered moot by Padron's actions.

In summary, we affirm the district court's refusal to enforce the Florida ex parte temporary injunction under either the Foreign

Judgments Act or comity. But we reverse the district court's order that the aircraft be returned to Kansas and that an additional bond be posted because we determine the district court lacked jurisdiction to enter these orders. Further, we reverse the district court's order of contempt because of the failure to comply with K.S.A. 20-1204a(b).

Affirmed in part and reversed in part.